[Cite as *State v. Collins*, 2024-Ohio-2891.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| Plaintiff-Appellee, | : CASE NO. 23CA13 |
| v. | : |
| CLAYTON COLLINS, | : DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : |

_____

APPEARANCES:

Christopher Bazeley, Cincinnati, Ohio, for appellant[1].

Andrea K. Boyd, Special Prosecuting Attorney, Assistant Attorney General, Ohio Attorney General's Office, Columbus, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:7-25-24
ABELE, J.

{¶1} This is an appeal from a Highland County Common Pleas Court judgment of conviction and sentence. Clayton Collins, defendant below and appellant herein, assigns two errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "COLLINS' PLEA WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY GIVEN."

_____

[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED WHEN IT IMPOSED A
CONSECUTIVE SENTENCE WITHOUT CONSIDERING ALL OF
THE R.C. 2929.14 FACTORS."

{¶2} In January 2023, a Highland County Grand Jury returned an indictment that charged appellant with (1) one count of rape of a child in violation of R.C. 2907.02(A)(1)(b), a first-degree felony, and (2) one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony. Appellant entered not guilty pleas.

{¶3} At a May 31, 2023 pretrial hearing, the trial court notified the parties of the court's practice that plea offers "be placed in writing so that it's clear what they are and then in the event that there isn't a plea reached that this matter proceeds to trial the Court has a written plea rejection form." In addition, the court added:

> [M]y policy is that any resolution of the case involving a jury trial has to be done fourteen days prior to the hearing. So, that's just a couple days prior to that and the reason for that is once we send out jury notices people start changing their routines and calling in and there's a lot of people effected [sic.] and so I don't engage, we don't have jury's that are sitting here everyday like they do in the city. So, we don't like to inconvenience people. So, there is no plea bargaining after fourteen days.

{¶4} At the final pretrial hearing on June 26, 2023, the State informed the trial court that appellant rejected the State's plea offer. Consequently, the parties entered a written plea rejection. In addition, the trial court reiterated:

> [W]'ll send out jury notices the end of this week and the Court's policy is there is no plea bargaining on trial date. There's no plea bargaining fourteen days, uh within fourteen days. So, if there is going to be a resolution it needs to be done by the end of the week. Otherwise, we will go to trial, we don't mess around talking and seeing if somebody wants to work something out the day of trial. We've got jurors here, they change their lives, everybody changes their schedule so. That's the way it will go.

{¶5} Two days later, at the June 28, 2023 change-of-plea hearing, appellant indicated that he consulted with his attorney, expressed satisfaction with his representation, acknowledged he understood the plea agreement, the allegations contained in the indictment, the rights he waived with his plea, and the possible penalties. The State reviewed the underlying facts of the indictment and noted that this case involved two separate victims, both appellant's relatives, one less than ten years old and one less than six years old.

{¶6} After appellant entered a guilty plea to both counts, the trial court ordered appellant to (1) serve a mandatory life term with possibility of parole after 15 years on Count 1- Rape, (2) serve a 48-month prison term on Count 2- Gross Sexual Imposition,

(3) serve the prison terms consecutively to each other and to another prison sentence appellant was serving on a different case, (4) serve a mandatory 5-year postrelease control term, and (5) register as a Tier III sex offender.  This appeal followed.

I.

{¶7}  In his first assignment of error, appellant asserts that he did not enter a knowing, intelligent, and voluntary plea.  Specifically, appellant contends that the trial court's policy of imposing a plea agreement deadline provided an advantage to the State and caused him to enter an invalid plea.

{¶8}  "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary."  Crim.R. 11, *State v. Dangler*, 2020-Ohio-2765, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29 (1992).  Thus, if a defendant did not enter a plea knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional.  *Id.; State v. Leib,* 2024-Ohio-1081, ¶ 13 (4th Dist.).  In general, appellate courts apply a de novo standard of review when evaluating a plea's compliance with Crim.R. 11(C).  *State v. Nero*, 56 Ohio St.3d 106, 108-109 (1990).  Moreover, evidence of a written waiver form signed by the accused constitutes strong proof of a valid waiver.  *State v. Clark*, 38 Ohio St.3d 252,

261 (1988).

{¶9} In the case at bar, appellant does not challenge the trial court's compliance with Crim.R. 11, but rather argues that, due to the court's policy to preclude pleas less than 14 days before a trial, he did not enter a knowing, intelligent, and voluntary plea.

{¶10} Concerning a judge's participation in the plea-bargaining process, the Supreme Court of Ohio cautioned that "the judge's position in the criminal justice system presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume." *State v. Byrd*, 63 Ohio St.2d 288, 292 (1980). Thus, although judicial participation is strongly discouraged, it does not render a plea per se involuntary; rather, the "ultimate inquiry is whether the judge's active conduct could have led the defendant to believe he could not get a fair trial, including a fair sentence after trial, and whether the judicial participation undermined the voluntariness of the plea." *State v. Lawson*, 2018-Ohio-4922, ¶ 20 (3d Dist.); *State v. Bodine,* 2023-Ohio-2197, ¶ 8 (3d Dist.).

{¶11} In *Bodine,* following the denial of Bodine's suppression motion, the trial court set the case for a jury trial on May 5, 2022. On April 18, 2022 the court held a final pretrial hearing

and explained that, because the court needed to send jury notices the next day, the court inquired whether Bodine understood the State's plea offer. *Id.* at ¶ 10. The court further explained its policy not to accept plea agreements to anything less than the entire indictment after the court sends jury notices. Bodine responded that, because the court planned to send jury notices the next day, he did not have adequate time to fully consider his options. When the court replied that the case had been pending for multiple months, Bodine responded that he had recently given his attorney documents relevant to his case and he did not believe he had adequate time to consult with his attorney. The court then stated, "[t]his is your option, Mr. Bodine, to go ahead with the proposal and enter pleas of guilty to those two counts or take it to a jury trial." Bodine chose a jury trial. *Id.* at ¶ 11. Later that day, however, the parties presented the court with a negotiated plea agreement and the court conducted a thorough Crim.R. 11 colloquy.

{¶12} On appeal, the Third District pointed out that cases in which a judge's involvement impacted the voluntariness of a plea include significant coercion from the trial court judges. For example, in *State v. Byrd*, 63 Ohio St.2d 288, 293 (1980), the Supreme Court of Ohio found a plea involuntary when the trial judge

met with Byrd without his lawyer present, urged him to enter a guilty plea, informed him that the evidence at trial would determine whether he "went to the electric chair," and urged his family members and a family friend to encourage him to enter a guilty plea. *Bodine* at ¶ 22, citing *Byrd.*

**{¶13}** The *Bodine* court pointed to another Third District involuntary plea case when the trial court told a defendant that if he testified at trial, he is "setting himself up for additional charges," that the evidence against him is "overwhelming," that "no way" would the jury not find him guilty, and that his decision to reject any plea offer is "stupid." *Id.* at ¶ 23, citing *State v. Howard*, 2010-Ohio-4828, ¶ 14 (3d Dist.). In *Howard,* the trial court also stated, "you should've been scared the night you did this stupid thing," indicating that the trial court had already determined the defendant's guilt. *Id.* The *Bodine* court held that the *Howard* statements emphasized the defendant's futility of pursuing a trial and are "entirely different" than the facts in *Bodine.* *Id.* at ¶ 23. Thus, the court concluded that, although at times Bodine did express reservations about entering a plea, the trial court's statements at the plea hearing did not amount to coercion that rendered Bodine's plea involuntary. *Id.* at ¶ 25.

**{¶14}** In the case sub judice, appellant's signed written guilty

plea form is included in the record. During the plea colloquy, the trial court reviewed the elements of the charge, the possible sentence and asked appellant if he understood that his guilty plea waived his right to a jury trial, right not to testify against himself, right to confront witnesses, right to compulsory process, and right to require the State to prove his guilt beyond a reasonable doubt. Appellant responded that he did understand.

{¶15} Although appellant now contends that the trial court's admonition meant that he had only "a matter of hours" to enter his plea, the record reveals that the trial court notified appellant of the plea deadline at the May 31, 2023 pretrial hearing and again at the June 26, 2023 pretrial hearing. When appellant entered his plea on June 28, 2023, trial was set to begin on July 12. With a trial date of July 12, 2023, appellant knew about the time limit and that he had four weeks to enter his plea. Thus, appellant knew about the plea deadline from May 31 until his June 28 plea.

{¶16} Moreover, as appellee points out, at the June 28, 2023 change of plea hearing the trial court asked appellant, "do you feel you had enough time to fully consider this matter before making this decision to sign this document?" Appellant replied, "Yes, Your Honor." When asked if he signed the agreement voluntarily, appellant responded, "Absolutely." Further, appellant

confirmed that he had spoken with his attorney about the plea, that he understood the terms of the plea and understood the constitutional rights he waived by entering the plea, that he was satisfied with his counsel, and that no threats had been made.

{¶17} In addition to his argument that he had "only a matter of hours" to enter his plea, appellant further characterizes the trial court's plea deadline policy as an "arbitrary deadline [that] provided the state with the upper hand in plea negotiations." Other courts, however, also use plea agreement deadlines. *See State v. Cogar,* 2017-Ohio-1470 (5th Dist.)(plea deadline three weeks before trial); *State v. Dahlberg,* 2021-Ohio-550 (11th Dist.)(plea deadline hearing); *State v. Stephenson* (Apr. 30, 1997), 9th Dist. No. 17752 (trial court had discretion to accept plea after court's plea deadline had passed.) Further, as appellee points out, federal courts employ plea deadlines. *See U.S. v. Santos,* 2003 WL 21088960 (E.D. Tenn May 2, 2003)(it is common knowledge that the Court consistently sets plea deadlines approximately three to four weeks before the scheduled trial date).

> Setting such deadlines is the standard practice in this district and is widely practiced in many districts across the country. *United States v. Allen*, 2002 WL 31890920 (6th Cir. Dec. 26, 2002) (unpublished); *United States v. Robertson*, 2002 WL 1773302 (10th Cir. Aug. 2, 2002) (unpublished); *United States v. Vargas Lopez*, 2000 WL

> 1728114 (9th Cir. Aug. 25, 2000) (unpublished). Courts may reject guilty pleas that are tendered after a deadline is set by the court. *United States v. Moore*, 916 F.2d 1131, 1136 n. 11 (6th Cir.1990); *United States v. Gamboa*, 166 F.3d 1327, 1331 (11th Cir.1998).

*Santos*, *supra*.

**{¶18}** As outlined above, in the case sub judice the trial court notified appellant of the plea agreement deadline well in advance. There are valid reasons that courts use plea agreement deadlines, especially in less populated counties that do not have readily available pools of jurors at hand in the courthouse to serve, but instead must order personnel to individually notify prospective jurors that their services are necessary and make other necessary preparations to accommodate prospective jurors. Here, at the plea hearing appellant stated that he had not been threatened to enter his plea, and, when asked if he signed the agreement voluntarily, appellant replied, "Absolutely."

**{¶19}** Consequently, after our review we conclude that appellant did enter a knowing, intelligent, and voluntary guilty plea. Accordingly, we overrule appellant's first assignment of error.

## II.

**{¶20}** In his second assignment of error, appellant asserts that the trial court erred when it did not consider all of the R.C. 2929.14 factors and imposed sentences to be served consecutively to

each other and to a previously imposed sentence in Case No. 21CR0107.

**{¶21}** When reviewing felony sentences, appellate courts apply the standard outlined in R.C. 2953.08(G)(2). *State v. Wilburn*, 2023-Ohio-4865, ¶ 70 (4th Dist.) R.C. 2953.08(G)(2)(a) provides that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, the statute authorizes appellate courts to "increase, reduce, or otherwise modify a sentence" "if it clearly and convincingly finds either of the following":

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or(C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

**{¶22}** The Supreme Court of Ohio has recognized that R.C. 2953.08(G)(2) means that appellate courts ordinarily, " ' defer to trial courts' broad discretion in making sentencing decisions.' " *State v. Gwynne*, 2023-Ohio-3851, ¶ 11, quoting *State v. Rahab*, 2017-Ohio-1401, ¶ 10; see also *State v. Marcum*, 2016-Ohio-1002, ¶ 23 (appellate court's review of whether sentence is clearly and convincingly contrary to law under R.C. 2953.08(G) is deferential

to sentencing court). Thus, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify consecutive sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. The clear-and-convincing standard for appellate review in R.C. 2953.08(G)(2) is written in the negative. *Gwynne,* 2023-Ohio-3851, at ¶ 13. Moreover, "clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶23}** In general, a statutory presumption exists in favor of concurrent sentences pursuant to R.C. 2929.41(A) and R.C. 2929.14(C)(4) governs the imposition of consecutive terms of imprisonment. To justify the imposition of consecutive terms of imprisonment, "a trial court must make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but the court has no obligation to state reasons to support its findings." *State v. Blair*, 2019-

Ohio-2768 ¶ 52 (4th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, syllabus.  This Court explained the findings required to support the imposition of consecutive sentences:

> "Under the tripartite procedure set forth in R.C. 2929.14(C)(4), prior to imposing consecutive sentences a trial court must find that: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of three circumstances specified in the statute applies."

*State v. Cottrill*, 2020-Ohio-7033, ¶ 14 (4th Dist.), quoting *State v. Baker*, 2014-Ohio-1967, ¶ 35-36 (4th Dist.).

**{¶24}** Further, as we outlined in *Cottrill*, the three circumstances are:

> "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

*Cottrill* at ¶ 14, quoting R.C. 2929.14(C)(4)(a)-(c).

**{¶25}** The record must support any findings that the applicable statutory sentencing provisions require and made by the sentencing court, such as those contained in R.C. 2929.14(C)(4)(c). *State v. Gray*, 2019-Ohio-5317, ¶ 21 (4th Dist.); *State v. Drummond,* 2024-Ohio-81, ¶ 11 (4th Dist.). Further, in *Drummond* we observed that the plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and to uphold the trial court's findings unless those findings are clearly and convincingly not supported by the record. *Drummond* at ¶ 12. In *State v. Bonnell*, 2014-Ohio-3177, the Supreme Court of Ohio held, "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *Id.* at ¶ 37.

**{¶26}** In the case sub judice, it is undisputed that the trial court included the necessary findings under R.C. 2929.14(C)(4) to support the imposition of consecutive sentences in its June 28, 2023 sentencing entry. Appellant, however, asserts that the trial court failed to make the required necessity and proportionality findings at the sentencing hearing. "If the trial court fails to make the requisite findings at the sentencing hearing, the imposition of consecutive sentences is contrary to law even if the

sentencing entry includes the findings." *State v. Conn*, 2023-Ohio-2669, ¶ 26 (4th Dist.), citing *State v. Brickles*, 2021-Ohio-178, ¶ 9, 11 (4th Dist.). However, as appellee points out, although the record must contain a basis upon which a reviewing court can determine that the trial court made the R.C. 2929.14(C)(4) findings, "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

{¶27} In the case at bar, at sentencing the trial court stated the following regarding its decision to impose consecutive sentences:

> The Court is not going to follow the recommendation of concurrent sentence because to do so would mean that the offense meant nothing. There's two separate victims. If it had been the same victim it would be different. We have two separate victims, you have two courses of conduct that are independent and the harm to these victims in each case is such that one single prison term would not adequately reflect the seriousness of your conduct. And that has to be taken into consideration. And the fact that you did these, and you have a prior criminal record. Your criminal history demonstrates to the Court as well as the nature of these offenses that this is necessary to protect the public. So, the four years sentence will be ordered to be served consecutively to the sentence in Count One. Both sentences are ordered to be served consecutively to the sentence that you're currently serving from this court in * * * 21 CR 107.

Thus, we believe that the court adequately stated on the record that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Bonnell* at ¶ 36.

**{¶28}** Finally, appellant contends that the sentencing entry failed to indicate the statute that established the consecutive sentencing requirement. As appellee observes, however, the sentencing entry contained checkboxes for the trial court to determine which sections applied to the case at bar. The trial court placed an "X" by the clause that stated, "Consecutive sentences are required pursuant to Section _____ ORC," but did not fill in the blank. The court also placed an "X" next to the following clauses:

> Pursuant to Section 2929.14(C)(4) that the consecutive sentences are necessary to protect the public from future crime or to punish the offender and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and the court also finds any of the following:
>
> ___ The offender committed one or more of the multiple offenses while the offender was awaiting rial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> _X_ At least two of the multiple offenses were commixed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was

so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

_X_ The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶29} After our review, we conclude that the trial court did not err when it imposed consecutive sentences. Further, we do not have a firm belief or conviction that the record does not support the trial court's finding that consecutive sentences are not disproportionate to the seriousness of appellant's conduct and to the danger he poses to the public.

{¶30} Accordingly, for the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J.: Concurs in Judgment & Opinion
Hess, J.: Concurs in Judgment Only

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.