[Cite as *State v. McFarland*, 2025-Ohio-1816.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

State of Ohio,                              :

    Plaintiff-Appellee,              :    Case Nos. 23CA13
                             :               23CA14

    v.                               :

                             :    <u>DECISION AND</u>
William A. McFarland,                       :    <u>JUDGMENT ENTRY</u>

                             :

    and                              :

                             :

Bobbi Jo McFarland,                         :

                             :

    Defendants-Appellants.           :
_____

<u>APPEARANCES:</u>

Donald K. Pond, Uniontown, Ohio, for Appellant, William McFarland.

Angela Miller, Jupiter, Florida, for Appellant, Bobbi Jo McFarland.

Jennifer M. Graham, Hocking County Prosecuting Attorney, Robert N. Abdalla
and Elizabeth N. Bull, Hocking County Assistant Prosecuting Attorneys, Logan,
Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Appellants, William and Bobbi Jo McFarland, have both filed appeals

from their joint convictions for two counts of failure to provide for a functionally

impaired person, fourth-degree felonies in violation of R.C. 2903.16(A)(C)(1), as

well as their joint convictions for two counts of attempted failure to provide for a

functionally impaired person, fifth-degree felonies in violation of R.C.

2903.16(A)(C)(1).  These matters were consolidated below and share the same trial

court record.  Therefore, they have been sua sponte consolidated on appeal.  On

appeal, Appellants both challenge the trial court's imposition of consecutive

sentences.  After review, we find the consecutive sentences imposed by the trial

court are contrary to law and are not supported by the record.  Accordingly, the

judgments of the trial court are reversed, Appellants' sentences are vacated, and

these matters are hereby remanded to the trial court for resentencing.

## FACTS AND PROCEDURAL HISTORY

{¶2} On August 26, 2022, Appellants were each indicted on one count of

involuntary manslaughter, a first-degree felony in violation of R.C. 2903.04(A)

and (C), and one count of failing to provide for a functionally impaired person, a

fourth-degree felony in violation of R.C. 2903.16(C)(1).  The functionally

impaired person named in the indictment was Joshua McFarland, who was the

adult son of William and the stepson of Bobbi Jo.  The filing of the indictment

stemmed from Joshua's death.

{¶3} The police report that was created at the time of the offense explained

that Joshua was transported to Fairfield Medical Center by his step-mother, Bobbi

Jo McFarland, on Saturday, April 23, 2022.[1]  Joshua was found to be "extremely

---

[1] The police report was admitted as a joint exhibit during the change-of-plea hearing.

malnourished, had bruises and sores (some severe all the way to the bone)" and died at the hospital. Per the report, "[i]t was suspected Joshua had not been taking [sic] care of for some time." The report stated that Bobbi Jo reported that Joshua lived at home with her and her husband, William, and that Joshua hadn't eaten or drank for two days. The report further stated that Joshua had suffered with bed sores for as long as six months, which had "gotten out of control." Bobbi Jo also reported that Joshua had not seen a physician for several years.

{¶4} The only information in the police report regarding Joshua's medical condition was that Joshua was "a thirty (30) year old, who was MRDD (Mental Retardation and Developmental delay/disabilities)." The next day, the couple's three other minor children were removed from their care and both William and Bobbi Jo were arrested and were subsequently indicted. The trial court set bond for each of them at "$100,000 recognizance" or "$500,000 cash or surety." Unable to secure bond, both Appellants remained in jail for approximately six months.

{¶5} The cases were eventually consolidated, although each Appellant had separate appointed counsel. Upon the motion of their defense counsel, the trial court approved and advanced funds for the hiring of an expert. The trial court also lowered the bond to a "$300,000 appearance bond." Appellants, however, remained in jail.

{¶6} Once the expert report was obtained, defense counsel moved the court a second time for a reduction in bond.  A bond hearing was thereafter held on February 23, 2023.  Excerpts of the expert report were read into the record as follows:  " '[Joshua] had significant underlying comorbid diagnoses including spastic quadriplegic cerebral palsy, malnutrition, liticachia (ph) and muscle wasting, spastic dysphagia,' and a bunch of other serious disorders which contributed in large part to his death."  Another excerpt from the report read into the record stated that Joshua had "surpassed the median life expectancy given the severity of his disease and he would not have been predicted to live past 30 years."  It was then noted that Joshua was "30 years and 7 months at the time of his death."  The following opinion of the expert was read into the record as follows:

> It's my medical opinion that multiple external factors as those inherent to Mr. McFarland's * * * natural disease process were outside the control and responsibility of his parents or caretakers.  It is without a doubt that Joshua McFarland, the decedent, and his family were set up for failure.

The expert report was not admitted into evidence as an exhibit, nor was it subsequently made part of the trial court record.

{¶7} Thereafter, and over the objection of the State, the trial court reduced Bobbi Jo's bond to "$25,000 with 10 percent permitted for cash or surety."  It reduced William's bond to "$50,000 with 10 percent permitted for cash or surety."  Appellants were required to wear ankle monitors, confined to Hocking county,

were not allowed contact with each other, and there was no provision for visitation with their other children.  In agreeing to reduce the bond, and as will be explained in more detail below, the trial court found that there was no great risk of danger to others.

{¶8} The parties subsequently entered into plea negotiations, whereby Appellants agreed to enter Alford pleas to reduced charges brought through a bill of information in exchange for the dismissal of the original indictment.  As a result, both Appellants entered Alford pleas to two counts of failure to provide for a functionally impaired person, fourth-degree felonies in violation of R.C. 2903.16(A)(C)(1), as well as two counts of attempted failure to provide for a functionally impaired person, fifth-degree felonies in violation of R.C. 2903.16(A)(C)(1).  The agreement provided that Appellants' new reduced charges would not be merged, but that Appellants would argue for community control while the State would argue for maximum and consecutive sentences.  The trial court ordered presentence investigation reports be prepared ahead of sentencing.

{¶9} A sentencing hearing was held on August 23, 2023.  Defense counsel argued for community control, again citing to the expert report but failing to admit the report into evidence.  The State again recommended maximum and consecutive sentences be imposed.  The trial court ultimately sentenced both Appellants to maximum prison terms of 18 months on each fourth-degree felony and maximum

prison terms of 12 months on each fifth-degree felony. The trial court further ordered the prison terms to be served consecutively, for an aggregate term of five years each.

{¶10} William and Bobbi Jo both filed separate timely appeals to this Court. Counsel for both parties properly moved to supplement the appellate record with copies of the presentence investigation reports that were prepared. Bobbi Jo's appellate counsel further moved this Court to supplement the record with a copy of the expert report, which was referenced below and relied upon by the trial court. However, because the expert report was never made part of the trial court record, it is not part of the record on appeal. Therefore, we denied the motion. These separate appeals were thereafter sua sponte consolidated and are now before this Court for decision.

### WILLIAM MCFARLAND'S ASSIGNMENT OF ERROR

I.    THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES UPON DEFENDANT-APPELLANT WILLIAM MCFARLAND, ABSENT THE FINDINGS REQUIRED BY LAW IN ACCORDANCE WITH R.C. 2929.14 AND *STATE V. BONNELL*.

### BOBBI JO MCFARLAND'S ASSIGNMENTS OF ERROR

I.    APPELLANT MCFARLAND'S SENTENCE WAS CONTRARY TO LAW, WHERE THE TRIAL COURT FAILED TO MAKE REQUIRED STATUTORY FINDINGS AND IMPOSED CONSECUTIVE SENTENCES.

II.     THE ACTS AND OMISSIONS OF APPELLANT BOBBI JO MCFARLAND'S COUNSEL DURING THE SENTENCING HEARING DEPRIVED MCFARLAND OF HER RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

ASSIGNMENT OF ERROR I

{¶11}  In their first assignments of error, Appellants each argue that the trial court failed to make the necessary findings before imposing consecutive sentences as required by R.C. 2929.14.  Their assignments of error both further contend that the record lacks evidence to support the imposition of consecutive sentences.  In response, the State contends that the trial court "considered" the necessary consecutive sentencing factors during the sentencing hearing and set forth the necessary findings in the sentencing entry.  Because their assignments of error raise the same arguments, we address them in conjunction with one another.

Standard of Review

{¶12} When reviewing felony sentences, appellate courts apply the standard set forth in R.C. 2953.08(G)(2).  *State v. Spencer*, 2024-Ohio-59, ¶ 13 (4th Dist.).  *See e.g. State v. Nelson*, 2023-Ohio-3566, ¶ 63 (4th Dist.).  R.C. 2953.08(G)(2)(a) provides that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."  Instead, the statute authorizes appellate courts to "increase, reduce, or otherwise modify a sentence" "if it clearly and convincingly finds either of the following:"

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶13} The Supreme Court of Ohio has recognized that R.C. 2953.08(G)(2) means that appellate courts ordinarily, " 'defer to trial courts' broad discretion in making sentencing decisions.' " *State v. Gwynne*, 2023-Ohio-3851, ¶ 11, quoting *State v. Rahab*, 2017-Ohio-1401, ¶ 10; *see also State v. Marcum*, 2016-Ohio-1002, ¶ 23 (appellate court's review of whether sentence is clearly and convincingly contrary to law under R.C. 2953.08(G) is deferential to sentencing court); *State v. Collins*, 2024-Ohio-2891, ¶ 22 (4th Dist.). Thus, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify consecutive sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. The clear-and-convincing standard for appellate review in R.C. 2953.08(G)(2) is written in the negative. *Gwynne, supra*, at ¶ 13. Moreover, "clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Legal Analysis

{¶14} Both Appellants argue that the trial court failed to make the necessary consecutive sentence findings during the sentencing hearing and further argue that the record does not support the imposition of consecutive sentences. For the following reasons, we agree.

{¶15} In general, a statutory presumption exists in favor of concurrent sentences pursuant to R.C. 2929.41(A) and R.C. 2929.14(C)(4) governs the imposition of consecutive terms of imprisonment. *Collins, supra*, at ¶ 23. To justify the imposition of consecutive terms of imprisonment, "a trial court must make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but the court has no obligation to state reasons to support its findings." *State v. Blair*, 2019-Ohio-2768 ¶ 52 (4th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, syllabus. This Court has explained the findings required to support the imposition of consecutive sentences as follows:

> "Under the tripartite procedure set forth in R.C. 2929.14(C)(4), prior to imposing consecutive sentences a trial court must find that: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct *and* to the danger the offender poses to the public; *and* (3) that one of three circumstances specified in the statute applies."

(Emphasis added). *State v. Cottrill*, 2020-Ohio-7033, ¶ 14 (4th Dist.), quoting *State v. Baker*, 2014-Ohio-1967, ¶ 35-36 (4th Dist.).

{¶16} Further, as we outlined in *Cottrill*, and more recently in *Collins*, the three circumstances are:

> "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, *and* the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

(Emphasis added.) *Cottrill* at ¶ 14, and *Collins*, ¶ 24, quoting R.C. 2929.14(C)(4)(a)-(c).

{¶17} The record must support any findings that the applicable statutory sentencing provisions require and that are made by the sentencing court, including those contained in R.C. 2929.14(C)(4)(a)-(c). *State v. Gray*, 2019-Ohio-5317, ¶ 21 (4th Dist.); *State v. Drummond*, 2024-Ohio-81, ¶ 11 (4th Dist.). Further, in *Drummond* we observed that the plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive sentence findings, and to uphold the trial court's findings unless those findings are clearly and convincingly not supported by the record. *Drummond* at ¶ 12.

{¶18} Initially we must note that the record indicates the trial court appeared to believe that because the parties agreed, as part of the negotiated plea agreement, that there would be no merger of the offenses, that it was not required to make consecutive sentencing findings before imposing consecutive sentences. However, the concepts of merger of allied offenses of similar import and the imposition of consecutive sentences are two entirely different concepts. Nevertheless, it appears the trial court endeavored to make the necessary consecutive sentencing findings, although falling short of the statutory requirements.

{¶19} Upon imposing consecutive sentences during the sentencing hearing, the trial court stated as follows:

> The Court has carefully considered the input that I've had today and especially the input in the presentence report, the history of the case as best I could assimilate it, the purposes and the principles of sentencing, the recidivism factors, the seriousness factors. And even though the parties have stipulated that I do not have to consider necessarily the consecutive prison terms standards, I have considered those standards as well. And I have also considered the rationale for the plea agreement.

> * * *

> And based on that rationale, the Court concludes – and I'm treating both cases the same because I agree that the Court need not pay attention to Mr. McFarland's record of 20 years ago. I'm not considering that.

> * * *

> All of that considered, the Court believes that the sentence should be the sentence recommended by the State. And

therefore, I'm sentencing each defendant to 18 months on each felony-4 and 12 months on each felony-5. Those are to be consecutive which means they accumulate to a 60-month sentence.

* * *

I specifically refer to 2929.14(C)(4), which I've indicated has been considered even though the plea agreement would not require such consideration.

Thus, the sentencing hearing transcript excerpts demonstrate that although the trial court may have considered R.C. 2929.14(C)(4), it failed to make the necessary findings required by the statute before imposing consecutive sentences.

{¶20} Further, although not raised by the parties, we note that the sentencing entry likewise fails to include the necessary findings required by R.C. 2929.14(C)(4). For example, the sentencing entry states as follows:

The Court finds that consecutive sentences are necessary to protect the public from future crime and to punish the defendant. Implicit in the plea agreement the parties agree no merger application and if the Court sentenced to prison it could find the factors present for consecutive sentences. Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The Court carefully considered the presumption of Community Control. However, the Court finds that the act was so egregious and that the harm caused was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct demonstrates [sic] that consecutive sentences are necessary to protect the public from future crime by the offender.

The trial court appears to have conflated the findings set forth in R.C. 2929.14(C)(4)(b) and (c) without fully satisfying the findings required by either of

those subsections. For example, although the court appears to have found the harm caused by the offenses was great and unusual under R.C. 2929.14(C)(4)(b), it did not find that "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct." Likewise, although the court appears to have found that consecutive sentences are necessary to protect the public from future crime by the offender as required by R.C. 2929.14(C)(4)(c), it specifically stated that it was not taking into consideration William's criminal history, which occurred over 20 years prior, and Bobbi Jo essentially had no criminal history at all.

{¶21} Appellants next argue that the record did not support the imposition of consecutive sentences in these cases. Again, we agree. This Court has reviewed the record, including the police report and the presentence investigation reports performed for both Appellants.[2] We have also reviewed every hearing transcript. There is nothing contained in any of these records/reports demonstrating that Appellants pose a danger or threat to the public or that consecutive sentences were necessary to protect the public from future crime.

{¶22} Although Appellants' adult son essentially died while in their care, this case represents one of extenuating circumstances. These circumstances are not likely to repeat themselves as between these Appellants and the general public, or even as between these Appellants and their other children. The record indicates

---

[2] The police report contains statements obtained from hospital staff that treated Joshua on the night of his death.

that their adult son who died suffered from the most severe form of cerebral palsy, was a quadriplegic, suffered from seizures, and had an intellectual disability. He was completely dependent upon Appellants for his care.

{¶23} Although the report provided by the expert hired by Appellants and paid for by the trial court was never admitted into evidence and is not part of the record on appeal, certain excerpts from that report were read into the record at various hearings and are part of the hearing transcripts. According to the excerpts of the report appearing in the hearing transcripts, Appellants' son's physical condition at the time of his death, including his malnourishment and bed sores, was part of the process of his disease and he had already lived past his expected lifespan of 30 years. The trial court did find during the sentencing hearing that Appellants could have done more at the end of their son's life so that he did not suffer, but there is nothing in the record translating Appellants' conduct into any risk to the public. While those facts may justify imposition of non-minimum prison sentences rather than community control, they do not support the imposition of consecutive sentences.

{¶24} It is important to note that Appellants were both originally indicted on first-degree felony involuntary manslaughter charges. They were held in jail for six months awaiting trial and lost custody of their other three children. Once the expert report was obtained and shared with the trial court, bond was reduced,

Appellants were released from jail, and the State offered to proceed on a new bill

of information charging both Appellants with low level felonies in exchange for

Alford pleas, and agreed to dismiss the original indictment. Again, we do not have

the benefit of the expert report. However, after excerpts of it were read into the

record during the bond reduction hearing, the trial court drastically reduced the

bond and Appellants were released from jail.

{¶25} During that hearing, William's defense counsel argued as follows on

behalf of both William and Bobbi Jo:

> They're not a danger – they're not a danger to the community.
> The alleged victim in his [sic] case is their own child who was,
> again, someone suffering from severe medical complications.
> The idea that they would go out and commit a string of similar
> type crimes is exceedingly low if not impossible. This is a very
> specific alleged crime with a specific alleged victim with a
> specific set of circumstances that simply is not repeatable and is
> not likely to be repeatable. This isn't an instance where you have
> two people who are committing carjackings or committing a
> string of thefts or committing a string of assaults. That's just
> simply not the type of case we have here.

The State's only argument in response was that because William had a criminal

history involving a sex offense, he was a danger to his own children and "any other

children who were members of the public." However, William's previous offense

occurred more than 20 years prior and was unrelated to the charges stemming from

the death of his son.[3]

{¶26} After hearing the arguments made in reference to bond, the trial court

stated as follows:

> But the issues of danger to the community and flight risk are dangers that I would take strongly into consideration. And I don't think there is a great risk of flight here. I don't think there's a great risk of danger to doing harm to others, as Mr. Baum argued. If the State is correct, then the harm was done to the decedent who passed away as a result of what the State believes was abandonment or no care, or inadequate care or negative care.
>
> * * *
>
> All that being said, I'm going to modify the bond.

{¶27} Taking into consideration the trial court's position regarding the

absence of any threat to public safety voiced at the bond reduction hearing,

coupled with the fact that no other contrary evidence was added to the record

between then and the sentencing hearing, we find that the record fails to clearly

and convincingly support the trial court's imposition of consecutive sentences.

## Conclusion

{¶28} Based upon the foregoing, we conclude that the trial court failed to

make the findings required by R.C. 2929.14(C)(4) prior to imposing consecutive

---

[3] In fact, the trial court specifically stated during the later sentencing hearing that it was not taking into consideration William's prior offense. Thus, there was no criminal history here that supported the imposition of consecutive sentences.

sentences during the sentencing hearing and further failed to include the necessary findings in the sentencing entry. Moreover, and most importantly, we conclude that the record before us does not clearly and convincingly support the imposition of consecutive sentences. As a result, the consecutive sentences imposed by the trial court are contrary to law and are not supported by the record. Therefore, these assignments of error are sustained, the judgments of the trial court are reversed, Appellants' sentences are vacated, and these matters are hereby remanded to the trial court for resentencing.

## ASSIGNMENT OF ERROR II

{¶29} In her second assignment of error, Bobbi Jo McFarland contends that her defense counsel provided ineffective assistance of counsel at her sentencing hearing. However, in light of our disposition of both Appellants' first assignments of error, Bobbi Jo's second assignment has been rendered moot. Therefore, we will not address it.

**JUDGMENTS REVERSED AND REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENTS BE REVERSED and the CAUSES REMANDED.  Appellee shall pay costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**