[Cite as *State v. Gaffney*, 2025-Ohio-4963.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRANDON V. GAFFNEY,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 BE 0012

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 24 CR 178

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Martin S. Hume*, Martin S. Hume Co., L.P.A., for Defendant-Appellant.

Dated: October 30, 2025

**HANNI, J.**

{¶1}  Defendant-Appellant, Brandon V. Gaffney, appeals from a Belmont County Common Pleas Court judgment sentencing him to a total of 17-21.5 years in prison. Appellant was convicted of the aggravated possession of drugs resulting from a controlled purchase on April 20, 2024 and four drug-related crimes stemming from a June 21, 2024 search of his home.

{¶2}  Appellant asserts the trial court's scheduling of a plea deadline was unconstitutional and an abuse of discretion.  He also contends the court failed to offer the parties a chance to poll the jury after the verdict and the court failed to assure the unanimity of the verdict.  He further argues the trial court failed to suppress a photo lineup and apply the exclusionary rule.  Appellant additionally asserts the trial court erroneously denied his motion to sever and failed to grant his motion for a new trial.  He also submits his counsel was ineffective for failing to file a motion to suppress evidence seized on June 21, 2024.  Finally, Appellant contends the trial court erred by imposing consecutive sentences and failed to accept two of his counsel's proposed jury instructions.

{¶3}  All of Appellant's assignments of error lack merit.  No legal support exists for finding that a trial court commits a constitutional violation by imposing a plea deadline and no plain error exists with the court's imposition of the plea deadline here.  Further, a trial court does not commit constitutional or plain error by failing to poll the jury or by failing to ask counsel if they wish to poll the jury.  The trial court also applied the proper legal standard in finding the photo lineup not unduly suggestive, and competent, credible evidence supports that determination.

{¶4}  In addition, joinder of the charges in this case was proper because the evidence was simple and direct such that the jury would not have been confused by the evidence that proved each act.  The trial court also did not abuse its discretion by excluding only the data from the GPS tracker collected beyond the 45-day deadline. Further, counsel was not ineffective for failing to move to suppress evidence from the search of Appellant's house because the court was required to review the supporting affidavit as a whole and not individual statements in isolation.  In addition, the trial court's imposition of consecutive sentences was proper and we cannot clearly and convincingly

find that the sentence was not supported by the record. Finally, the trial court did not abuse its discretion by denying Appellant's proposed jury instructions.

{¶5} On April 20, 2024, a confidential informant (CI) who previously served the Belmont County Sheriff's office told the Criminal Interdiction Unit he believed he could buy methamphetamine from an individual named Brandon "Beesly,"[1] who was bringing the drugs from Cleveland. A controlled purchase was set up with Detective Grant stationed nearby in a vehicle, and Detective Hilderbrand and Detective Mackey in a separate vehicle surveilling the scene. The CI was given marked "buy" money and a cell phone to record the events. The video recorded by the CI was poor quality, but he participated in a photo lineup due to the unclear view of the seller on the video.

{¶6} Detective Hilderbrand prepared the photo lineup and placed Appellant's picture in one folder, placed five other photos in five different folders, and prepared four blank folders. Detective Hilderbrand knew the identity of the suspect. Detective Mackey showed the photos to the CI and Detective Hilderbrand remained in the room during the presentation. The CI did not identify a suspect in the folders on the first round of viewing. Upon a second viewing, the CI identified Appellant as the seller.

{¶7} After the controlled purchase, officers input the license plate of the vehicle driven by the seller into Flock, a public camera that tracks license plates of vehicles passing by it. The vehicle was owned by Caprita Bell and was also seen in Bellaire, Ohio. After securing a warrant, officers installed a GPS tracking device on the vehicle. The warrant for the GPS tracking device expired after 45 days, but was left on the vehicle for 51 days. It showed trips to Cleveland back to Belmont County and to a home owned by Cecillia Delong. Cecillia Delong was renting the home to Appellant. Officers placed a pole camera outside of the residence and monitored Appellant leaving and returning to the residence.

{¶8} Detective Grant then filed an affidavit in support of a search warrant for Appellant's residence. He indicated that the CI identified Appellant from a photo lineup and officers had observed Appellant driving to Cleveland and then back to homes where narcotics were found on previous occasions. The affidavit further stated that Appellant

---

[1] "Beesly" and "Beasley" refer to the same individual. The spellings are different based on the person referring to this individual.

was the husband of the owner of the car.  Detective Grant further indicated that he believed Appellant to be a large-scale drug dealer, Appellant used an alias of "Beasley," and he observed Appellant place a case into the trunk of the car and take a trash bag into his home.  Detective Grant further attested that he observed Appellant in front of an individual's house, the individual entered Appellant's car for a short time, and then they both left.  Detective Grant indicated that the individual in Appellant's car spoke to another individual by phone and they talked about drugs located in the house.

{¶9}  The warrant was issued for Appellant's house and Appellant was not home when it was executed.  The search yielded a Country Time Lemonade container with a fake bottom located in a kitchen cabinet.  Upon removing the bottom, officers found fentanyl and other drugs which formed the basis of the June 21, 2024 charges in the indictment.

{¶10}  On August 8, 2024, a Belmont County Grand Jury indicted Appellant on four counts stemming from the June 21, 2024 search of his home:  first-degree felony aggravated drug trafficking of methamphetamine in violation of R.C. 2925.03(A)(2), (C)(1)(E) (Count 1), with two forfeiture specifications; first-degree felony aggravated possession of methamphetamine in violation of R.C. 2925.11(A) and (C)(1)(D) (Count 2); second-degree felony trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2) and (C)(9)(E) (Count 5); and second-degree felony possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and (C)(11)(D) (Count 6).

{¶11}  Appellant was also indicted on two counts relating to the controlled purchase that occurred on April 20, 2024:  second-degree felony aggravated trafficking of methamphetamine in violation of R.C. 2925.03(A) and (C)(1)(D) (Count 3); and second-degree felony aggravated possession of methamphetamine in violation of R.C. 2925.11(A) and (C)(1)(C) (Count 4).  Counts 3 and 4 included forfeiture specifications.

{¶12}  On October 2, 2024, the trial court issued a judgment entry indicating that it had arraigned Appellant and appointed him counsel.  Among other dates, the trial court also scheduled a plea offer deadline for October 28, 2024 and a plea agreement deadline for November 4, 2024.

{¶13}  On October 25, 2024, Appellant filed a motion to suppress evidence seized from his house located in Bellaire, Ohio.  He also filed a motion to continue the plea

agreement deadline and trial. The court granted Appellant's motion and rescheduled the plea agreement deadline to January 6, 2025 and the trial to January 22, 2025.

{¶14} On November 14, 2024, Appellant filed a motion to suppress eyewitness testimony from the CI who identified Appellant through a photo lineup. Appellant asserted that admission of that testimony would violate his due process rights and R.C. 2933.83 because the police failed to appoint a blind administrator to conduct the lineup. He submitted that Detective Mackey of the Belmont County Sheriff's Office was present at the controlled purchase with the CI and showed the CI the photo array.

{¶15} On November 21, 2024, the trial court held a hearing on Appellant's motions. On January 3, 2025, the court issued a judgment entry overruling in part and sustaining in part the motion to suppress the search of Appellant's residence. The court found that the GPS tracking device should have been removed from Appellant's car within 45 days and any evidence obtained after day 45 was excluded. The court also overruled Appellant's motion to suppress the photo identification. The court reminded the parties of the January 6, 2025 plea agreement deadline and the January 22, 2025 jury trial date.

{¶16} On January 9, 2025, the trial court's entry indicated it conducted a plea agreement deadline hearing. The court granted the parties' joint request to continue the plea agreement deadline "one last time" to January 16, 2025.

{¶17} On January 10, 2025, Appellant filed a motion in limine to exclude all evidence obtained after the GPS tracking device should have been removed, including the evidence seized as a result of the search warrant at Appellant's house.

{¶18} On January 16, 2025, the trial court issued an entry stating that it held the plea agreement deadline hearing and had delayed the start of the hearing so the parties could continue to negotiate. The court indicated that negotiations had failed and it had denied Appellant's oral motion to continue his trial.

{¶19} On January 21, 2025, the parties jointly requested to continue the trial due to inclement weather. The court granted the motion and continued the trial to February 25, 2025.

{¶20} On February 12, 2025, Appellant filed a motion for misjoinder of offenses. He asserted that the court should separate the charges emanating from the June 21, 2024 house search and from the April 20, 2024 controlled-buy charges because two

months elapsed between the incidents and he would suffer prejudice if they were tried together. The court overruled Appellant's motion on February 19, 2025.

{¶21} On February 21, 2025, Appellant filed proposed jury instructions, including photo lineup instructions relating to a blind administrator and procedures relating to the jury's determination of an informant's credibility.

{¶22} On February 24, 2025, the trial court repeated its prior ruling that no evidence gained after the expiration date for the GPS tracking warrant could be used at trial. The court overruled Appellant's motion in limine, finding he failed to provide the court with a copy of the affidavit for the search of his house. Further, the court held that the evidence from the search warrant of his house was not excluded due to the expiration of the GPS warrant.

{¶23} On February 25, 2025, the case proceeded to trial. On February 27, 2025, the jury found Appellant guilty on all counts, except Count 4, which had been withdrawn by the State during trial.

{¶24} Before sentencing, Appellant filed a motion for a new trial based on ineffectiveness of counsel. He asserted counsel failed to file a motion to suppress evidence obtained from the search of his house when the affidavit supporting the search warrant lacked probable cause to believe the search would reveal items identified in the warrant. The court overruled the motion. (Sent. Tr., 2-5).

{¶25} The court held a sentencing hearing and sentenced Appellant to a total term of 17 to 21.5 years in prison. On March 14, 2025, the court filed its sentencing entry, noting Appellant's prior juvenile adjudications, his seven prior felony convictions, his five prior prison sentences, and his misdemeanor convictions. The court also cited Appellant's pending charges in federal court, his 25-year criminal history, and facts showing Appellant showed no remorse and had not been amenable to prior sanctions.

{¶26} The court sentenced Appellant to: 8-12 years in prison on Count 1; merged Count 2 into Count 1 as allied offenses; 7-10.5 years in prison on Count 3; 2-3 years in prison on Count 5; and merged Count 6 into Count 5 as allied offenses. The court indicated that the aggregate sentence was 17-21 years in prison, three years of driver license suspension, forfeitures of a vehicle and currency and $350 in restitution.

Case No. 25 BE 0012

{¶27} On April 9, 2025, Appellant filed a notice of appeal. He presents eight assignments of error. In his first assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED BY SETTING A PLEA DEADLINE**.

{¶28} Appellant contends the trial court violated the separation of powers doctrine and his due process rights by imposing a plea deadline. He submits that the Ohio Rules of Criminal Procedure provide no authority for imposing a plea deadline and doing so allows the judiciary to usurp the role of the prosecution.

{¶29} Appellant equates Arizona Crim.R. 17.4 to Ohio Crim. Rule 11(F) and notes that Arizona cases forbid trial court limitations on plea bargaining that is not authorized under its rule. Appellant also compares the 17-21.5-year sentence he received after going to trial to the 4-year prison sentence he was offered if he pled guilty. He contends this establishes he was severely punished for asserting his right to a jury trial. He submits that imposing an arbitrary plea deadline negatively impacts plea negotiations because parties may learn additional information that may change their negotiating positions later in discovery and motion practice. He requests we find the trial court's imposition of a plea deadline unconstitutional and not permitted under the Ohio Rules of Criminal Procedure.

{¶30} The trial court did not violate the Constitution, abuse its discretion, or commit plain error by imposing a plea deadline. Appellant did not object when the trial court set plea offer and plea agreement deadlines at Appellant's arraignment. Further, Appellant filed a motion to continue the plea agreement hearing deadline and failed to object to the deadline as unconstitutional or an abuse of discretion at that time. The court granted his motion and extended the deadline, and also continued the plea agreement hearing at the parties' joint request. The court additionally allowed the parties additional time at the plea agreement hearing to negotiate a plea. After no resolution occurred, the trial court refused Appellant's request for additional time after his counsel suggested they may reach an agreement if they had more time.

{¶31} Since Appellant did not object at any time during the trial court proceedings, plain error is the proper standard of review. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An appellate court is not required to correct plain error, as the Rule

states that the court need only "notice" plain error. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Accordingly, the Ohio Supreme Court cautions appellate courts to correct plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. quoting *State v. Long*, 53 Ohio St.2d, 91 (1978), paragraph three of the syllabus.

**{¶32}** Appellate courts must abide by three limitations under Crim.R. 52(B) to correct an error in the absence of an objection. First, we must find an error, meaning a deviation from a legal rule. *Barnes*, 94 Ohio St.3d at 27, citing *State v. Hill*, 92 Ohio St.3d 191, 200 (2001). Second, the error must be a plain error, meaning an "obvious" defect in the proceedings. *Id*., citing *State v. Sanders*, 92 Ohio St.3d 245, 257 (2001) (citations omitted). And third, the error must have impacted "substantial rights," meaning that the error affected the outcome of the trial. *Id*. (citations omitted).

**{¶33}** Here, Appellant points to no legal authority prohibiting a trial court from imposing plea offer or plea agreement deadlines. The Ohio Rules of Criminal Procedure do not prohibit such deadlines and no other Rule conflicts with imposing such deadlines. Crim.R. 57(B) states, "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules of criminal procedure and shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedures exists." Thus, the court did not err by imposing the deadlines.

**{¶34}** In *State v. Collins*, 2024-Ohio-2891, ¶ 17 (4th Dist.), the defendant asserted the trial court's plea deadline was arbitrarily set and gave the state a distinct advantage in negotiating a plea. The Fourth District Court of Appeals noted the standard practice for trial courts to impose plea deadlines. *Id.* (citations omitted). The court explained valid reasons for such deadlines, such as judicial economy, court control over its docket, and making necessary preparations for prospective jurors*. Id.*

**{¶35}** The Ohio cases Appellant cites as support for prohibiting plea deadlines are distinguishable. *See State v. Stafford*, 2004-Ohio-3893 (1st Dist.) (court had plea discussion with defendant and told him if he was found guilty by jury, court would be inclined to give him maximum consecutive penalty rather than lesser sentence discussed at prior hearing); *Columbus v. Bee*, 67 Ohio App.2d 65 (10th Dist. 1979) (little question

existed that court proposed probation for no contest plea but implied it would not be given if defendant went to trial and was convicted).

**{¶36}** The Arizona cases cited by Appellant are inapplicable. In *Espinoza v. Martin*, 182 Ariz. 145 (1995), the Arizona Supreme Court held that judges cannot adopt policies rejecting all plea agreements except those that plead guilty to the indictment after a set deadline or those that had a stipulated sentence. *See also Hare v. Superior Court*, 133 Ariz. 540, 541 (Ariz. App.1982) (courts cannot have blanket policy of automatically rejecting all plea agreements after a trial date unless the agreement is to plead guilty to all charges in the indictment). In the other cited case, *State v. Darelli*, 205 Ariz. 458, 462 (Ariz. App. 2003), the Arizona appellate court ruled that the trial court "inappropriately read a "plea cut-off date" into Ariz. Crim.R. 17.4(a) that barred all plea negotiations. The trial court informed the parties it could not accept any plea agreement besides one to a full dismissal of charges by the prosecution or a guilty plea to all charges by the defendant because prospective jurors were waiting for trial. *Id.* No Ohio courts have held plea deadlines impermissible.

**{¶37}** As Appellee correctly notes, Appellant does not assert the trial court refused to accept a negotiated plea agreement due to the expiration of a plea deadline. Nor does Appellant complain the court was involved in the plea negotiation process or that the court had a blanket policy of rejecting plea agreements entered into after an imposed plea deadline. Accordingly, Appellant's reliance on the Arizona cases is misplaced.

**{¶38}** Further, even if Appellant demonstrated plain error, he fails to establish that it affected his substantial rights. Appellant had ample time to negotiate, review, and consider plea offers and to negotiate plea agreements in this case. The trial court set the first plea offer deadline for October 28, 2024 and plea agreement deadline for November 4, 2024. The court continued the deadlines twice, once at Appellant's request, and once at the joint request of the parties. The court extended plea negotiations and proceedings to January 16, 2025.

**{¶39}** Accordingly, Appellant's first assignment of error lacks merit and is overruled.

**{¶40}** In his second assignment of error, Appellant asserts:

Case No. 25 BE 0012

**THE TRAL COURT ERRED BY FAILING TO OFFER THE PARTIES THE OPPORTUNITY TO POLL THE JURY AND FAILING TO ASSURE THE JURY VERDICT WAS CORRECT BEFORE DISCHARGING THE JURY**.

{¶41} Appellant submits the jury verdict is not final because the trial court did not "hearken" the jury verdict by inquiring if the verdicts read in open court were their unanimous verdicts. Appellant also contends the trial court erred by failing to ask counsel if they wanted to poll the jury. He cites Ohio caselaw and submits that the trial court cannot reduce a verdict to a judgment if it is not read in open court and if the parties were not offered an opportunity to poll the jury. He also cites Maryland and Kansas caselaw holding that a verdict is not valid until it is orally announced by the court, unanimous as affirmed by the jury, and hearkened, or polled, by asking each juror if the verdict announced is their verdict.

{¶42} We find no merit to Appellant's second assignment of error. Crim.R. 31(A) provides that, "**Return**. The verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein, and returned by the jury to the judge in open court." R.C. 2945.171 requires that the jury verdict in criminal cases be in writing and signed by each concurring juror.

{¶43} The written jury verdict forms in this case were returned by the jury foreman to the trial court on the record. (Trial Tr., 648). The trial court read each verdict form and indicated that the verdict forms contained "12 signatures in ink." (Trial Tr., 649-652). Thus, the requirements of Crim.R. 31(A) and R.C. 2945.171 were met.

{¶44} In addition, Crim.R. 31(D) provides that:

**Poll of Jury**. When a verdict is returned and before it is accepted the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged.

{¶45} R.C. 2945.77 provides that "the jury may be polled at the request of either the prosecuting attorney or the defendant."

Case No. 25 BE 0012

{¶46} The trial court afforded each party the opportunity to poll the jury. While the court did not specifically ask each party if they wished to poll the jury, the court, after reading the verdict forms, asked the State and Appellant's counsel if they had "anything more." (Trial Tr., 652). This was the opportunity for each party to request a polling of the jury. The trial court also could have polled the jury on its own motion. No such request or motion was made. In *State v. Hope*, 2019-Ohio-2174, ¶ 151 (11th Dist.), the appellate court rejected the assertion that the jury must be polled on their verdict without a request by a party to do so. *Id*. Quoting Crim.R. 31(D) and R.C. 2945.77, the court held that polling was not required because nothing in the record showed that any party requested the court to poll the jury. *Id*.

{¶47} Accordingly, Appellant's second assignment of error lacks merit and is overruled.

{¶48} In his third assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE PHOTO LINEUP IDENTIFICATION WHERE POLICE FAILED TO SUBSTANTIALLY COMPLY WITH THE STATUTORY REQUIREMENTS THEREBY RENDERING THE IDENTIFICATON [SIC] UNRELIABLE**.

{¶49} Appellant contends the trial court should have granted his motion to suppress the CI's identification of him in a photo lineup because two deviations from photo lineup procedures occurred. He asserts the blind administrator requirement was violated when Detective Hilderbrand, the investigator who prepared the photo lineup, was present when the lineup was shown to the informant. Appellant further asserts that procedure was violated when the informant stated "no" after viewing each photo and then identified Appellant after Detective Mackey asked him to take a second look at the photos. Appellant also submits that Detective Mackey was involved in the investigation and therefore was not a blind administrator.

{¶50} Appellant maintains his due process rights were violated by the unnecessarily suggestive procedures used in the photo lineup. He also cites R.C. 2933.83(C)(1) which requires trial courts to consider evidence that required procedures

were not followed when determining motions to suppress eyewitness identifications resulting from a lineup.

**{¶51}** Appellee counters that competent, credible evidence supported the trial court's denial of Appellant's motion to suppress. Appellee contends the photo lineup was not unduly suggestive because Detective Mackey was a "blind administrator," which is required by R.C. 2933.83. Appellee cites Detective Hilderbrand's testimony that he prepared ten folders for the lineup while Detective Mackey was on the road. Appellee cites Detective Hilderbrand's testimony that he then handed Detective Mackey the folders upon Mackey's return, Detective Mackey did not know which photos went into which folders, and Detective Mackey conducted the lineup with the CI. Detective Hilderbrand stated that he was present for the lineup, but he did not conduct the lineup and remained silent throughout the procedure.

**{¶52}** Appellee further asserts that Detective Hilderbrand testified that the CI did not say "no" after each photo and actually said nothing after his first review of the array. Appellee cites Detective Hilderbrand's testimony that the CI looked through the photos the first time, placed the photos in a pile, and Detective Mackey then asked him if he needed to take a second look. Appellee submits that the 14-point procedure for conducting a lineup allows a second look and the procedure was followed.

**{¶53}** In reviewing a ruling on a motion to suppress, we must determine whether competent, credible evidence supports the trial court's findings. *State v. Williams*, 2024-Ohio-943, ¶ 43 (7th Dist.). This standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *Id*., quoting *State v. Venham*, 96 Ohio App.3d 649, 653 (4th Dist. 1994). An appellate court accepts the trial court's factual findings and relies upon its ability to assess witness credibility, but we independently determine, without deference to the trial court, whether the trial court applied the appropriate legal standard. *Williams* at ¶ 43, citing *State v. Rice*, 129 Ohio App.3d 91, 94, (7th Dist. 1998). We will not disturb a trial court's decision on a motion to suppress when supported by substantial credible evidence. *Id*.

**{¶54}** R.C. 2933.83 sets forth the minimum requirements for photographic lineup procedures. It includes a folder system, filler photographs that resemble the suspect's

description, blank photographs, a blind or blinded administrator, and documentation. R.C. 2933.83(C)(1) provides that evidence of a law enforcement agency's failure to comply with the procedure may be considered by the court in adjudicating a motion to suppress eyewitness identification resulting from that lineup.

{¶55} R.C. 2933.83(B)(1) provides that "a blind or blinded administrator shall conduct the live lineup or photo lineup." R.C. 2933.83(A) contains the following definitions of words used in the minimum requirements for lineup procedures:

(1) "Administrator" means the person conducting a photo lineup or live lineup.

(2) "Blind administrator" means the administrator does not know the identity of the suspect. "Blind administrator" includes an administrator who conducts a photo lineup through the use of a folder system or a substantially similar system.

(3) "Blinded administrator" means the administrator may know who the suspect is, but does not know which lineup member is being viewed by the eyewitness. "Blinded administrator" includes an administrator who conducts a photo lineup through the use of a folder system or a substantially similar system.

{¶56} When determining the admissibility of eyewitness identification, the trial court uses a two-step test: the court first determines whether the identification procedure was unduly suggestive. *State v. Royal*, 2014-Ohio-1175, ¶ 27 (7th Dist.), citing *Neil v. Biggers*, 409 U.S. 188, 196-197. A photo lineup is unduly suggestive if it "steers the witness to one suspect, independent of the witnesses' honest recollection." *State v. Adams*, 2015-Ohio-3954, ¶ 208. If the procedure was unduly suggestive, the court then determines if the identification is reliable under all of the circumstances, even if it was suggestive. *Id*. If the procedure is not unduly suggestive, the court need not proceed to the second prong. *State v. Hopkins*, 2021-Ohio-4632, ¶ 29 (7th. Dist.) citing *State v. McCrary*, 2014-Ohio-1468, ¶ 53 (7th Dist.) (citing *State v. Gross*, 2002-Ohio-5524, ¶ 19, *State v. Murphy*, 91 Ohio St.3d 516, 534 (2001)).

{¶57} Appellant first asserts that this procedure was violated when Detective Hilderbrand prepared the photo array and remained present when the lineup was

conducted. He concludes this violated the requirement to use a blind or blinded administrator.

**{¶58}** However, it was not Detective Hilderbrand who administered the lineup. Detective Hilderbrand testified to the steps he took to create the folders. (Supp. Hg., Tr., 81-82, 89-90, 95-99). He testified that after he prepared the folders, he handed them to Detective Mackey, who was called in from the road to conduct the lineup. (Supp. Hg. Tr., 92). Detective Mackey then showed the photos to the CI. (Supp. Hg. Tr., 90, 99). Both Detective Hilderbrand and Detective Grant testified that Detective Mackey performed the lineup. (Supp. Hg. Tr., 15, 90, 99). Detective Mackey is the individual who showed the folders to the CI. Under R.C. 2933.83(A), Detective Mackey is therefore the administrator. Thus, it is Detective Mackey who had to be the "blind" or "blinded administrator."

**{¶59}** It is true that Detective Mackey participated in the controlled purchase investigation. Detective Grant testified at the suppression hearing that Detective Mackey was in a surveillance vehicle during the buy. (Supp. Hg. Tr., 38-39). However, Detective Grant also testified that Detective Mackey could not determine the identity of the drug seller from the surveillance vehicle due to his vehicle's distance from the buy. (Supp. Hg. Tr., 39-41). Thus, this testimony would make Detective Mackey a blind administrator as found by the trial court.

**{¶60}** Moreover, even if Detective Mackey were disqualified as a blind administrator due to his involvement, he is still a blinded administrator because he conducted the photo lineup, was not present when the lineup was created, and did not know the photos that the confidential informant was viewing.

**{¶61}** Appellant further asserts that the lineup procedure was violated because Detective Hilderbrand was present during the lineup. However, this does not necessarily lead to suppression. In *State v. Harmon*, 2017-Ohio-8106, ¶ 26 (2d Dist.), the defendant moved to suppress a victim's photo identification because the detective, who knew the suspect's identity and created the lineup, was present when the officer conducted the photo lineup. The appellate court noted that the trial court found the testimony of the detective and the officer credible. *Id*. The court further held that while the procedure was not in compliance with R.C. 2933.83, it was "'not so impermissibly suggestive as to give

rise to a substantial likelihood of misidentification.'" *Id*. at ¶ 31, quoting *State v. Moon*, 2013-Ohio-395 (2d Dist.).

**{¶62}** Similarly here, Detective Hilderbrand knew Appellant's identity, but he created the photo array while Detective Mackey was on the road and he stood silent in the room as Detective Mackey conducted the lineup. Appellant presents no evidence of suggestibility. It is the defendant's burden to show the procedures were "both suggestive and unnecessary *and* that the testimony was or will be unreliable based upon the totality-of-the circumstances test." *State v. Monford*, 2010-Ohio-4732, ¶ 41 (10th Dist.).

**{¶63}** Appellant further contends the lineup procedure was violated when Detective Mackey asked the CI to "take a second look" after the informant stated "no" after each photo, indicating that he did not see the perpetrator. Detective Hilderbrand testified the CI looked through the folders, "and at that point in time, stated he wasn't sure and then asked to look through them a second time. When looking through them a second time, the CI identified the fourth photo as the person he bought drugs from." (Supp. Hg. Tr., 101). On cross-examination, Detective Hilderbrand testified, "He didn't say no to anybody. He just passed the folders and put them into a pile and then continued to look through them." (Supp. Hg. Tr., 109-110). Detective Hilderbrand continued that the CI put the folders in a pile "and then Deputy Mackey asked him if he needed to take a second look." (Supp. Hg. Tr., 117). The CI then looked a second time and picked out Appellant. Detective Hilderbrand testified that Detective Mackey had to inform the CI that he could look a second time because otherwise the CI would not know he could. (Supp. Hg. Tr., 119).

**{¶64}** The CI viewed the photos a second time. R.C. 2933.83(A)(6)(g) states that, "[t]he administrator follows the procedures specified in this division for a second viewing if the eyewitness requests to view each of the folders a second time." Thus, a second viewing is permitted. According to Detective Hilderbrand, Detective Mackey simply asked the CI if he wanted to take a second look if he needed to after the CI placed the folders in a pile after the first viewing. (Supp. Hg. Tr., 110, 118-119). This does not appear to be impermissibly suggestive. Further, as Detective Hilderbrand explained at the suppression hearing, the CI would not have known that he could take a second look if he wanted to without someone telling him that he could. (Supp. Hg. Tr., 119). When he did,

the CI identified Appellant and indicated that he had a 6/10 confidence level in his identification.

**{¶65}** For these reasons, we find that Detective Mackey was a blind administrator because he did not know Appellant's identity in the folders as the folders were created by Detective Hilderbrand and Detective Mackey showed the folders to Appellant. We further find that even if Detective Mackey could not be considered a blind administrator because he participated in the surveillance of Appellant, he was nevertheless a blinded administrator because he was not present when Detective Hilderbrand created the folders.

**{¶66}** Further, Detective Hilderbrand was not the blind administrator because Detective Mackey administered the lineup to the CI. Detective Hilderbrand's silent presence at the lineup was not impermissibly suggestive.

**{¶67}** Moreover, Detective Mackey's query as to whether the CI wanted a second look at the photo array did not violate procedure. In light of the above discussion, we need not consider the second step "– whether the identifications were unreliable under the totality of the circumstances." *Moon*, 2013-Ohio-395, at ¶ 35 (2d Dist.).

**{¶68}** Accordingly, Appellant's third assignment of error lacks merit and is overruled.

**{¶69}** In his fourth assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED IN FAILING TO PROPERLY APPLY THE EXCLUSIONARY RULE WHERE IT FOUND THAT EVIDENCE WAS ILLEGALLY OBTAINED BUT NEVERTHELESS ALLOWED THE FRUIT OF THE POISONOUS TREE TO BE ADMITTED INTO EVIDENCE.**

**{¶70}** Appellant contends that once the trial court determined police exceeded the scope of the 45-day GPS warrant, it should have suppressed all evidence related to the warrant as fruit of the poisonous tree, rather than just the evidence obtained after the 45th day. Appellant concludes that this includes the search warrant that was issued for his residence since it was obtained based on the GPS warrant.

**{¶71}** Appellant's assertion lacks merit. "The exclusionary rule applies to constitutional violations, not statutory ones." *State v. Simpson*, 2023-Ohio-3207, ¶ 21 (3d

Dist.), quoting *State v. Campbell*, 2022-Ohio-3626, ¶ 3 and citing *State v. Ridenour*, 2010-Ohio-3373, ¶ 29, 33 (4th Dist.) (denial of motion to suppress affirmed because the police's noncompliance with Crim.R. 41 did not violate constitutional rights).

**{¶72}** Here, the trial court suppressed all evidence obtained after expiration of the 45-day deadline for the GPS tracking warrant. Crim.R 41(C)(2) outlines the issuance and contents of a tracking device warrant and provides that the device may be used for a period not to exceed 45 days. This is not a constitutional violation. Consequently, the exclusionary rule does not apply.

**{¶73}** Accordingly, Appellant's fourth assignment of error lacks merit and is overruled.

**{¶74}** In his fifth assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SEVER THE TRIAL OF THE TWO SEPARATE INCIDENTS WHICH OCCURRED MONTHS APART.**

**{¶75}** Appellant contends the court should have granted his motion to sever the trial on his April 20, 2024 offense from his June 21, 2024 offenses. He submits that the CI's 6/10 confidence level in identifying him was weak and little evidence existed to link him to the drugs found in his home on June 21, 2024.

**{¶76}** The standard of review for a motion to sever trials is abuse of discretion. *State v. Ford*, 2019-Ohio-4539, ¶ 106 (citing *State v. Hand*, 2006-Ohio-18, ¶ 166.). "Abuse of discretion" means an attitude that is "unreasonable, arbitrary, or unconscionable." *Ford* at ¶ 106, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985) (citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980)).

**{¶77}** Crim.R. 8(A) allows joinder "if the offenses charged . . . are of the same or similar character . . . " Joinder is also allowed when the offenses "are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." *Ford* at ¶ 103. Allowing joinder "conserves resources by avoiding duplication inherent in multiple trials and minimizes the possibility of incongruous results that can

occur in successive trials before different juries." *Id*., quoting *State v. Hamblin*, 37 Ohio St.3d 153, 158 (1988).

**{¶78}** A defendant can request severance of counts or offenses under Crim.R. 14. In order to defeat joinder and obtain severance, a defendant must show "(1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." *Ford* at ¶ 106, quoting *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). The State can overcome a claim of prejudicial joinder by showing that (1) it could have introduced evidence of the joined offenses as other acts under Evid.R. 404(B) or (2) the "evidence of each crime joined at trial is simple and direct." *State v. Lott*, 51 Ohio St.3d 160, 163 (1990).

**{¶79}** The trial court did not abuse its discretion in denying Appellant's motion for severance. The court reasonably found that under Evid.R. 404(B), the State could introduce evidence from the April 20, 2024 controlled buy into the trial on the June 21, 2024 offenses to explain the investigation for the search of Appellant's residence. It would also show a common plan or scheme as the controlled buy on April 20, 2024 involved methamphetamine and the June 21, 2024 home search revealed methamphetamine found hidden in the bottom of a lemonade mix container in the kitchen.

**{¶80}** The trial court also reasonably found that joinder was permissible because the evidence of each joined offense was simple and direct. The evidence of the April 20, 2024 controlled buy is simple and direct and clearly distinct from the evidence from the June 21, 2024 search of Appellant's home.

**{¶81}** Accordingly, Appellant's fifth assignment of error lacks merit and is overruled.

**{¶82}** In his sixth assignment of error, Appellant asserts:

**GAFFNEY RECEIVED INEFFICTIVE [sic] ASSISTANCE OF COUNSEL AND/OR THE TRIAL COURT ERRED IN FAILING TO SUSTAIN GAFFNEY'S MOTION FOR A NEW TRIAL.**

**{¶83}** Appellant contends his counsel was ineffective for failing to file a motion to suppress the evidence found at his home on the basis that Detective Grant's affidavit supporting the search warrant for his home lacked probable cause to believe the items sought would be found in the home. He notes the trial court's repeated statement that no such motion to suppress was filed and the affidavit and search warrant were not placed in the record until after trial when he filed his motion for a new trial. He asserts the four corners of the affidavit fail to establish probable cause that the items in the warrant would be found in a search.

**{¶84}** This assignment of error lacks merit. A claim of ineffective assistance of counsel requires showing both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If one prong of this test fails, the Court need not consider the other. *State v. Madrigal*, 2000-Ohio-448, ¶ 15.

**{¶85}** To show deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), citing *Strickland* at 687-688. Our review is highly deferential to counsel's decisions because of the strong presumption that counsel's conduct fell within the wide range of what would be considered reasonable professional assistance. *Id*. There are "countless ways to provide effective assistance in any given case." *Id*. To show resulting prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶86}** Further, we review a trial court's ruling on a motion for a new trial for an abuse of discretion. *See State v. Davis*, 2011-Ohio-5028, ¶ 37 (explaining that "[t]he trial court acts as the gatekeeper for [motions for a new trial] and, using its discretion, can limit the litigation to viable claims only."). Crim.R. 33, in relevant part, provides that:

A new trial may be granted if a defendant demonstrates that any of the following causes materially affected his "substantial rights":

(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

. . .

**{¶87}** In his motion for a new trial, Appellant raised the irregularity of the court's ruling and its abuse of discretion in overruling his motion to suppress. He alleged his counsel was ineffective for failing to file a motion to suppress the search of his house based on the absence of probable cause in the affidavit for the search warrant.

**{¶88}** Counsel was not ineffective in this case because such a motion to suppress would have been overruled. To determine the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Accord State v. George*, 45 Ohio St.3d 325 (1989).

**{¶89}** As a court of review, we must ensure that the court issuing the warrant had a substantial basis to conclude that probable cause existed. *Gates* at 236. We afford great deference to this decision and we review the totality of the circumstances to determine whether probable cause existed for the search warrant. *Id*. at 238. The defendant bears the burden of establishing that the evidence obtained under a search warrant should be suppressed because the warrant is invalid. *State v. Middleton*, 2024-Ohio-5172, ¶ 15 (7th Dist.) citing *State v. Dennis*, 79 Ohio St.3d 421, 426 (1997). The supporting affidavit for a warrant to search the home of a suspected drug dealer, "must, under the totality of the circumstances, establish a nexus between the defendant's criminal activity and his residence sufficient to raise a fair probability that evidence of criminal activity will be found there." *State v. Johnson*, 2024-Ohio-1147, ¶ 15 (1st Dist.), citing *State v. Lang*, 2023-Ohio-2026, ¶ 19 (1st Dist.) (citing State v. Hobbs, 2018-Ohio-4059, ¶ 58 (4th Dist.)) and *State v. Howard*, 2023-Ohio-4618, ¶ 20, 24 (1st Dist.).

{¶90} Appellant attached the affidavit in support of the search warrant to his motion for a new trial. Upon review of the five-page affidavit, it meets the probable cause standard. In the affidavit, Detective Grant detailed the circumstances of the controlled buy video that preceded and supported the search of Appellant's residence. He identified the make and model of the car and the license plate of the vehicle Appellant was driving during the buy. Detective Grant related that a clear photo of the vehicle was obtained and its license plate number was put into the Ohio Law Enforcement Gateway. He indicated the car owner's spouse was Appellant, Appellant was known to law enforcement, and they believed he was a large drug dealer operating with an alias of "Beasley," which detectives believed was the same name mentioned in their controlled buy. Detective Grant also described the photo lineup where the CI identified Appellant from the lineup as the person who sold him drugs in the controlled buy.

{¶91} Detective Grant also detailed the surveillance of Appellant's home and Appellant's numerous vehicle trips to Cleveland and returns from Cleveland with short trips to the homes of individuals known to law enforcement to be involved with illegal drugs. Detective Grant stated that in his experience and training, his observations of Appellant's actions were consistent with drug trafficking. He also noted that surveillance showed that Appellant drove to Cleveland on June 20, 2024 and returned the next day carrying a large black bag and large box into his home.

{¶92} This constitutes sufficient probable cause to support the search warrant for the residence. Since the affidavit contained sufficient probable cause to support the search warrant, counsel was not ineffective by failing to file a motion to suppress the search of the residence.

{¶93} Accordingly, Appellant's sixth assignment of error lacks merit and is overruled.

{¶94} In his seventh assignment of error, Appellant asserts:

**THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES.**

{¶95} Appellant contends the trial court erred by imposing a consecutive sentence. He asserts that the court lacked evidence to find that his illegal drug

possession and trafficking caused harm so great and unusual that no single prison term reflected the seriousness of the criminal conduct. He submits that no evidence showed he caused physical or mental damage or injury from either incident giving rise to his convictions.

**{¶96}** "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. A sentence is clearly and convincingly contrary to law in the following circumstances: (1) if it falls outside of the statutory range for the particular degree of offense; (2) if the trial court fails to properly consider the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12; or (3) if the trial court orders consecutive sentences and does not make the necessary consecutive sentence findings. *State v. Chappell*, 2024-Ohio-1541, ¶ 36 (7th Dist.), citing *State v. Pendland*, 2021-Ohio-1313, ¶ 41 (7th Dist.).

**{¶97}** In *State v. Jones*, 2020-Ohio-6729, the Ohio Supreme Court modified an appellate court's review of felony sentences. The Court clarified that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42. Thus, appellate review of the sentencing factors is very limited and we may not reweigh the findings.

**{¶98}** While our review is limited, the trial court must consider the sentencing laws, including those evaluating aggravating and mitigating factors. *State v. McElroy*, 2025-Ohio-1356, ¶ 23-24 (7th Dist.), citing *State v. Chappell*, 2024-Ohio-1541, ¶ 37 (7th Dist.); *State v. Duley*, 2023-Ohio-4722, ¶ 9 (7th Dist.); State v. Scott, 2023-Ohio-2640, ¶ 15 (7th Dist.) (citing *State v. Burkhart*, 2019-Ohio-2711, ¶ 16 (7th Dist.)). Although the sentencing court must consider the relevant sentencing factors under R.C. 2929.11 and 2929.12, neither statute requires the court to make specific factual findings on the record. *Jones* at ¶ 20.

**{¶99}** As to consecutive sentences, R.C. 2929.14(C)(4) provides that:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶100} The trial court here addressed its reasons for imposing consecutive sentences at the hearing. The court explained it was necessary to protect the public from future crime and to punish Appellant. (Sent. Tr., 31). The court noted Appellant's five past prison sentences and their ineffectiveness in causing reform. (Sent. Tr., 31). The court also stated that consecutive sentences were not disproportionate to the seriousness of Appellant's conduct in trafficking drugs and the resulting danger he poses to the public. (Sent. Tr., 31). The court indicated that Appellant's drug dealing was serious and dangerous to not only the victims he sold drugs to, but also to those collaterally affected by the abuse problems created. (Sent. Tr., 31). The court further found that Appellant committed a course of conduct of putting drugs into the community and the harm caused

by this was so great and unusual that no single prison term for any of the offenses adequately reflected the seriousness of his criminal conduct. (Sent. Tr., 32).

**{¶101}** The court's sentencing entry also stated that it considered R.C. 2929.11, 2929.12, 2929.13, and 2929.14. The court specifically stated it had considered the principles and purposes of sentencing as outlined in those statutes. The court made the same findings that it made at the sentencing hearing, explaining that consecutive sentences were necessary to protect the public from Appellant's future crimes and to punish him, and consecutive sentences were not disproportionate to the seriousness of Appellant's conduct and to the danger he posed to the public. The court found Appellant's five prior prison sentences were ineffective. The court further found that Appellant's offenses were not disproportionate to the seriousness of his drug trafficking and the resulting danger he poses by distributing illegal drugs to the actual victims and/or those victims who are impacted by drug abuse.

**{¶102}** Other courts addressing Appellant's argument have found that even without evidence of "actual harm" presented in the record, drug trafficking in substances such as methamphetamine and fentanyl pose a "significant danger to the public, both directly and indirectly" regardless of whether the person consuming the drug is injured. *See State v. Richey*, 2023-Ohio-336, ¶ 20 (12th Dist.). The *Richey* Court declared that the danger only increases when the drug trafficker continues to deal drugs even after being caught. *Id*. That court opined that the defendant had been fortunate that none of his buyers had been seriously hurt or killed. *Id*. at ¶ 19. The court held that the trial court's findings were not clearly and convincingly unsupported by the record. *Id*. at ¶ 20.

**{¶103}** Similarly here, the trial court noted Appellant's prior drug convictions and the dangerous effects his drug trafficking had on those consuming the drugs and those indirectly impacted. While no evidence in the record showed a direct serious physical or mental harm per se, the *Richey* case supports the finding of a serious potential and perhaps inevitable harm from continuing to traffic illegal drugs.

**{¶104}** Consequently, we cannot find that the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or that the sentence is otherwise contrary to law.

Case No. 25 BE 0012

**{¶105}** Accordingly, Appellant's seventh assignment of error lacks merit and is overruled.

**{¶106}** In Appellant's eighth assignment of error, he asserts:

**THE TRIAL COURT ERRED IN FAILING TO GIVE PROPER JURY INSTRUCTIONS REQUESTED BY THE DEFENDANT.**

**{¶107}** Appellant contends the trial court erred by not instructing the jury as his counsel requested on two instructions. The first instruction was Instruction 12(C), which requested the court instruct the jury on statutory procedures for conducting photo lineups. Appellant requested that the court specifically instruct the jury that, "in considering the surrounding circumstances under which the Informant has identified the defendant in the photo lineup, you must consider whether the lineup procedures used met several requirements. You may consider credible evidence of noncompliance with these requirements in determining the reliability of the Informant's identification resulting from or related to this lineup."

**{¶108}** Appellant asserts that R.C. 2933.82 requires this jury instruction because evidence of non-compliance with the procedure existed and the identity of the person who sold drugs to the informant was a crucial issue in this case. Appellant further asserts that his counsel requested the court to instruct the jury on 12(D) as to the credibility of an informant and the serious questions raised by an informant. The trial court refused this instruction.

**{¶109}** Appellee counters the trial court did not abuse its discretion in refusing the proposed jury instructions because the legal requirements of the photo lineup were discussed for the motion to suppress, but not for trial. Appellee further submits that the credibility instruction would have required the jury to view the confidential informant's testimony with "grave suspicion" and requested that it be "weighted with great caution." Appellee explains that Appellant's counsel could not cite to an Ohio Jury Instruction requiring this instruction and the court denied the instruction, explaining that a credibility jury instruction already existed, but defense counsel could argue in closing that the testimony should be viewed with caution or suspicion.

{¶110}  Appellant's counsel presented to the court a complete jury instruction on the photo lineup procedure in Proposed Jury Instruction 12(C).  That proposed instruction included the directions for administering the lineup and specifically advised in number 14 of "In the Presence of the Informant:"  that "[t]he Informant can view the folders for a second time if Informant requests.  If the Informant requests a second viewing, repeat steps 7 through 14 after documenting the results of the first viewing.  If the Informant does not request a second viewing the inquiry ends."  The proposed instruction also included the following statement which appeared in two different places: "You may consider credible evidence of non-compliance with these requirements in determining the reliability of the Informant's identification resulting from or related to this lineup."

{¶111}  During discussions on jury instructions, the court acknowledged that the record appeared to support an instruction on number 14 of Appellant's proposed jury instructions.  (Trial Tr., 504).  The prosecution stated "okay" and requested that the court note its objection due to the pretrial ruling overruling Appellant's motion to suppress evidence based on a violation of this procedure.  (Trial Tr., 504).

{¶112}  The trial court instructed the jury that it was their decision whether the identification was reliable under the totality of the circumstances.  (Trial Tr., 629).  The court informed them that they could consider the informant's capacity and the degree of attention that the informant paid to the offender, whether the informant had observed the offender in the past, and the surrounding circumstances.  (Trial Tr., 629).  The court also specifically advised the jury that, "The informant can view the folders for a second time if the informant requests.  If the informant does not request a second viewing, the inquiry ends."  (Trial Tr., 629).  After additional discussion with counsel off the record, the court thereafter gave the jury an additional instruction, stating that a "blind administrator" means "an administrator who does not know the identity of the suspect."  (Trial Tr., 647).  Detective Mackey was identified at trial as the administrator of the photo lineup.  (Trial Tr., 340).

{¶113}  Detective Hilderbrand had testified that while Detective Mackey may not be the type of blind administrator who knew nothing about the case, he was the type of an administrator who did not know who Detective Hilderbrand put into the folders that Mackey showed to the confidential informant.  (Trial Tr., 546-549).  Detective Hilderbrand

further testified that after the CI told Detective Mackey he could not identify anyone from the photo lineup, Detective Mackey asked if he "wanted another look." (Trial Tr., 548). The CI testified that after he looked at the photo lineup, no one appeared to be the seller. (Trial Tr., 240). He testified that Detective Mackey then told him to take a second look. (Trial Tr., 240). He then identified Appellant in the second viewing at a 6/10 or 60/40 confidence level. (Trial Tr., 243).

{¶114} We review a trial court's refusal to give a requested jury instruction under the abuse of discretion standard. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). Abuse of discretion means an attitude that is "unreasonable, arbitrary, or unconscionable *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985).

{¶115} Appellant concedes that he did not formally object to the court's refusal to give the two jury instructions. However, he submits that a party does not waive objections to the court's charge by failing to object because "[r]equested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 2015-Ohio-3954, ¶ 240. (citations omitted). Plain error applies when no objection was made.

{¶116} In any event, the trial court did not abuse its discretion by refusing to instruct the jury as Appellant requested. As to an instruction on non-compliance with the photo lineup procedure, as explained above, the trial court applied the proper legal standard and found that Detective Mackey was a "blind administrator" in overruling Appellant's motion to suppress. Further, the court found that offering the informant a second viewing did not render the photo lineup process faulty or suggestive since any suggestibility concern was outweighed by the facts that the confidential informant knew his seller, videotaped the controlled buy, identified Appellant shortly after the buy, ruled out other photos, and stated a 60% certainty level on his identification.

{¶117} In addition, the trial court properly instructed the jury on their job to determine the credibility of the witnesses and the court instructed them on the factors to review in determining credibility. (Trial Tr., 628-629). The court further instructed the jury that "[t]he informant can view the folders for a second time if the informant requests. If the informant does not request a second viewing, the inquiry ends." (Trial Tr., 629). After

additional discussion with counsel off the record, the court gave the jury an additional instruction, stating that a "blind administrator" means "an administrator who does not know the identity of the suspect." (Trial Tr., 647). Detective Mackey was identified at trial as the administrator of the photo lineup. (Trial Tr., 340).

**{¶118}** Thus, even though the trial court found the photo lineup procedure was not faulty, it nevertheless instructed the jury on determining the credibility of the witnesses, the definition of a blind administrator, and the second viewing of the photo lineup.

**{¶119}** Accordingly, Appellant's eighth assignment of error lacks merit and is overruled.

**{¶120}** For the above reasons, we find that all of Appellant's assignments of error are overruled and the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 25 BE 0012

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**