[Cite as *State v. Rogers*, 2026-Ohio-2277.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. 25CA10 & 25CA13 |
| v. | : | |
| ROBERT A. ROGERS, | : | DECISION & JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Brian A. Smith, Fairlawn, Ohio, for appellant[1].

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Alisa
Turner, Assistant Prosecuting Attorney, Chillicothe, Ohio, for
appellee.
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:6-11-26
ABELE, J.

{¶1} This is an appeal from a Ross County Common Pleas
Court judgment of conviction and sentence.[2] Robert Rogers,
defendant below and appellant herein, raises one assignment of
error for review:

> "THE TRIAL COURT COMMITTED PLAIN ERROR BY
> IMPOSING CONSECUTIVE SENTENCES ON APPELLANT,
> BY ORDERING APPELLANT'S SENTENCE IN CASE
> NUMBER 24CR136 TO BE SERVED CONSECUTIVELY TO
> APPELLANT'S SENTENCE IN CASE NUMBER 24CR39,
> IN VIOLATION OF APPELLANT'S RIGHT TO DUE
> PROCESS UNDER THE FIFTH AND FOURTEENTH

---

[1] Different counsel represented appellant during the trial court proceedings.
[2] Because appellant's appeal raises identical issues with respect to Case No.
25CA10 and Case No. 25CA13, we consolidate the cases for purposes of
discussion, decision and judgment.

AMENDMENTS TO THE UNITED STATES CONSTITUTION
AND OF APPELLANT'S RIGHT AGAINST CRUEL AND
UNUSUAL PUNISHMENT UNDER THE EIGHTH AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION AND ARTICLE I, SECTION 9 OF THE
OHIO CONSTITUTION."

{¶2} In March 2024, a Ross County Grand Jury returned an indictment in Case No. 24CR39 (Appellate Case No. 25CA10) that charged appellant with (1) one count of cocaine possession in violation of R.C. 2925.11 (with a specification that the amount exceeded 100 grams), a first-degree felony, (2) one count of trafficking in cocaine in violation of R.C. 2925.03, a first-degree felony, (3) one count of possession of cocaine in violation of R.C. 2925.11, a first-degree felony, and (4) six counts of having weapons while under disability in violation of R.C. 2923.13, all third-degree felonies. Appellant entered not guilty pleas.

{¶3} In May 2024, a Ross County Grand Jury returned an indictment in Case No. 24CR136 (Appellate Case No. 25CA13) that charged appellant with (1) one count of trafficking in cocaine in violation of R.C. 2925.03, and (2) one count of possession of cocaine in violation of R.C. 2925.11, both first-degree felonies. Appellant entered not guilty pleas.

{¶4} On December 3, 2024, the trial court held a combined plea hearing. The court reviewed appellant's charges in both cases, and indicated that counts one, two, and three (in Case

No. 24CR39) and counts one and two (in Case No. 24CR136) are first-degree felonies that "will carry indefinite sentences," "which means you will receive both a minimum and a maximum term." The court further explained that "because these are first degree felonies, the minimum term can range between three and 11 years," and "after the court picks the minimum sentence, the maximum term will automatically be the minimum term plus fifty percent of the minimum term." The court further noted that (1) each of the first-degree felonies carries a mandatory sentence, (2) appellant is ineligible for community control or judicial release for those offenses, and (3) each first-degree felony carries a mandatory fine of up to $20,000, half of which is mandatory. Thus, the court indicated that "the maximum prison term you could face on each of those first-degree felony counts is 16 ½ years in prison." With regard to Case No. 24CR39 the court explained that the five third-degree weapons charges carry a potential prison term of 9 to 36 months and a fine up to $10,000. The court further explained that appellant would serve a mandatory two to five-year postrelease control term.

{¶5} The trial court conducted a Crim.R. 11 colloquy and advised appellant of his rights and the effects of his decision to plead guilty, reviewed the signed plea form and jury waiver, reviewed the facts and charges, and asked appellant if any drugs, alcohol, or mind-altering substances influenced him. The

court advised and reviewed with appellant the constitutional rights he waived with his plea, including (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) the right to require appellee to prove guilt beyond a reasonable doubt, and (5) the privilege against compulsory self-incrimination. The court also explained the maximum penalties, postrelease control, and reminded appellant that the parties' sentencing recommendation did not bind the court's sentencing decision.

**{¶6}** Appellant expressed his understanding and agreement at each stage of the plea colloquy and affirmed his execution of the written plea form. In addition, the trial court verified that appellant discussed the plea with his counsel and acknowledged his satisfaction with counsel.

**{¶7}** Counsel recited the plea agreement in Case No. 24CR136, under which appellant would plead guilty to first-degree felony trafficking in cocaine (Count One) and first-degree felony possession of cocaine (Count Two). Appellant acknowledged that the maximum penalty could be a maximum prison term of 22-27.5 years, all mandatory, and a maximum $40,000 fine, $20,000 of which is mandatory. In Case No. 24CR39, appellant would plead guilty to Count One (possession of cocaine), Count Two (trafficking), and Count Three (possession),

all first-degree felonies, and six counts of having weapons while under disability, all third-degree felonies.

{¶8} The trial court also granted appellant's motion to modify bond and released him to spend time with his new child and visit his gravely ill mother.  The trial court stated:

> THE COURT: Now, so you and I understand each other, I will one hundred percent go along with that recommended time, so long as you do a couple of things: number one, don't get into trouble between now and sentencing, right?
>
> MR. ROGERS: Okay.  I won't.  Yes, sir.
>
> THE COURT: You understand when you were out the last time, new charges came about, right, so this is time- I'm looking at this as time that you spend valuable time with your family, right, not out.
>
> MR. ROGERS: Yes, sir.
>
> THE COURT: Not out playing around with drugs, right.  So don't get in trouble and make sure you show up.  Don't go off on a run or anything.  The reason I remind you of that is because based on the level of – I have years and years and years of time I could hang on you, right.
>
> MR. ROGERS: Yes, sir.
>
> THE COURT: All right.  So keep that in mind.  Don't go out and - - I mean you could - - good heavens, there's a ton of time that could happen.  I will go along with the plea deal, just make sure you don't get in trouble and make sure you're here on January 2nd, okay?
>
> MR. ROGERS: I will.

{¶9} On January 2, 2025, appellant unfortunately opted to fail to appear for sentencing.  The trial court issued a bench warrant for appellant's arrest and, after his apprehension in

Florida, the court proceeded with sentencing on March 26, 2025. Appellee reviewed the plea agreement and stated, "there was a global offer and acceptance in this case and for each case there was a state's recommendation of 14 to 16 ½ years prison on a total of two cases." Appellee further specified, with regard to Case No. 24CR39, "there is . . . merger on counts one and two . . . and the state would elect to – for the purpose of sentencing, on count one." Appellee also noted that it would dismiss the major drug offender specification. Regarding Case No. 24CR136, appellee indicated that Counts One and Two (trafficking and possession) would merge, and appellee elected to sentence on Count Two (trafficking).

{¶10} When the trial court provided appellant his right of allocution, he stated that "he lost it" when he visited his mother and discovered that she weighed 93 pounds, and he "went to Florida to work," cleaning celebrity mansions, making $25 an hour . . . and "saving up and sending the money back to Ohio to give my Mom a proper burial." "When I was sending the money back to give her a proper burial, I wanted to be a pallbearer to my Mom. She wanted me to be the pallbearer to put her in the ground." Appellant also stated that no trial court had ever given him the opportunity to rehabilitate himself by ordering him to seek drug treatment and argued that he did not have a drug trafficking record, only possession. The trial court

responded, "possession of a crap load of cocaine," and noted,

"that's not just personal use cocaine. That is dealer level

cocaine and you and I both know that."

{¶11} Appellee reviewed appellant's criminal history, which

included a 1999 trafficking and possession, a 2004 weapon under

disability, a 2008 possession and carrying a concealed weapon, a

2014 weapon under disability, a 2016 possession, aggravated

possession convictions in 2019. The trial court addressed

appellant:

> Here's the thing, Mr. Rogers. Let me start with the
> issues with your ailing mother. I let you out
> specifically knowing that you were facing a lot of time
> so that you could visit with your Mom and I understand
> that it's difficult to watch a parent get sick and die.
> There's nothing great about that. That's why I gave you
> that opportunity but I also warned you that there would
> be serious consequences if you didn't show up. Not only
> did you not show up, you were in another state and you
> had to be picked up by the U.S. Marshals. It's not like
> you just say hey, I took too long and turned yourself
> in. You had to be shipped back here after that. You
> have had opportunities to rehabilitate yourself and
> clearly those have failed miserably because we're back
> here in square one and you're picking up huge charges
> and you had multiple firearms on your person. I just -
> - I don't get why you would even do that. That's not an
> addiction thing. That's just criminal behavior and
> that's just me being honest with you

{¶12} The trial court indicated that it had considered the

oral statements, facts of the offenses, appellant's lengthy

criminal record, his behavior while on bond, the R.C. 2929.11

purposes and principles of sentencing, and the R.C. 2929.12

seriousness and recidivism factors.

{¶13} In Case No. 24CR39/(Appellate Case No. 25CA10), the trial court merged Counts One and Two and sentenced appellant to (1) serve a mandatory minimum 11-year to a maximum 16 ½ years on Count One (possession of cocaine in an amount equal to or exceeding 100 grams), (2) serve a mandatory 10-year prison term on Count Three (possession), and (3) serve a 30-month term on each of Counts Four through Nine (weapon under disability) to be served concurrent to one another but consecutive to Counts One and Three and consecutive to the sentence imposed in Case No. 24CR136.

{¶14} In Case No. 24CR136/(Appellate Case No. 25CA13), the trial court sentenced appellant to serve a mandatory minimum 10-year prison term with a maximum indefinite 15-year prison term on Count two (possession of cocaine in an amount equal to or exceeding 27 grams but less than 100 grams), to be served consecutively to the sentence imposed in Case No. 24CR39. The court further advised that the appellant faced a mandatory two to five-year postrelease control term. Thus, the court sentenced appellant to serve an aggregate 33.5-39-year prison term.

{¶15} The trial court also determined that consecutive sentences are necessary to protect the public from future crime and to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's

conduct and the danger the offender poses to the public.  The court further found that at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the course of the conduct adequately reflects the seriousness of the offender's conduct.  Finally, the court found that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.  This appeal followed.

I.

**{¶16}** In his sole assignment of error, appellant asserts that the trial court committed plain error when it imposed consecutive sentences, both with respect to ordering that the sentences in Count One, Three, and Four through Nine be served consecutively to one another, and with respect to ordering that appellant's sentence in Case No. 24CR39/(Appellate Case No. 25CA10) be served consecutively to appellant's sentence in Case No. 24CR136/(Appellate Case No. 25CA13), in violation of appellant's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and of appellant's right against cruel and unusual punishment under the Eighth and

Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Ohio Constitution.

**{¶17}** When reviewing felony sentences, appellate courts apply the standard set forth in R.C. 2953.08(G)(2). *E.g., State v. Jones,* 2024-Ohio-1083, ¶ 16; *State v. Nelson,* 2023-Ohio-3566 (4th Dist.), ¶ 63; *State v. Grashel,* 2025-Ohio-580 (4th Dist.), ¶ 19. The statute requires appellate courts to "review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(1). In reviewing the record, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2)(a). Instead, the statute authorizes appellate courts to "increase, reduce, or otherwise modify a sentence" "if it clearly and convincingly finds either of the following":

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2). As we observed in *Grashel,* practically speaking, R.C. 2953.08(G)(2) means that appellate courts ordinarily " ' defer to trial courts' broad discretion in making sentencing decisions,' " *State v. Gwynne,* 2023-Ohio-3851, ¶ 11 (lead opinion), quoting *State v. Rahab,* 2017-Ohio-1401, ¶ 10

(lead opinion); *accord State v. Glover,* 2024-Ohio-5195, ¶ 39 and 46 (lead opinion); *State v. Creech,* 2017-Ohio-6951, ¶ 11 (4th Dist.), quoting *State v. Venes,* 2013-Ohio-1891, ¶ 21 (8th Dist.)("[t]he language in R.C. 2953.08(G)(2) establishes an 'extremely deferential standard of review' for the restriction is on an appellate court, not the trial judge' "). In other words, appellate court may increase, reduce, or otherwise modify a sentence only if the court clearly and convincingly finds that (1) "the record does not support the sentencing court's findings" under the enumerated statutes, R.C. 2953.08(G)(2)(a), or (2) "the sentence is otherwise contrary to law," R.C. 2953.08(G)(2)(b). The term "contrary to law" means " 'in violation of statute or legal regulations at a given time.' " *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990).

{¶18} Thus, an appellate court may increase, decrease, or otherwise modify consecutive sentences only if it clearly and convincingly finds that the record does not support the trial court's findings or it clearly and convincingly finds that the sentence is contrary to law. *Glover* at ¶ 42. " '[C]lear and convincing evidence' is a degree of proof that is greater than preponderance of the evidence but less than the beyond-a-reasonable-doubt standard used in criminal cases." *Id.* at ¶ 46. Furthermore, "[n]owhere does the appellate-review statute direct

an appellate court to consider the defendant's aggregate sentence." Instead, we limit our review to the trial court's consecutive sentencing findings under R.C. 2929.14(C). *Id*. at ¶ 43. Nor does the statute allow an appellate court to reverse or modify a sentence because the trial court abused its discretion. *Id.* at ¶ 45; *Blanton* at ¶ 32; *State v. Hughes,* 2025-Ohio-894, ¶ 42 (4th Dist.).

**{¶19}** We initially recognize that at the sentencing hearing, because appellant did not object to the court's imposition of consecutive sentences, he forfeited all but plain error. *See State v. Grate*, 2020-Ohio-5584, ¶ 204; *Grashel,* 2025-Ohio-580, at ¶ 22. A party asserting plain error must demonstrate that: (1) an error occurred; (2) the error was obvious; and (3) a reasonable probability that the error affected the outcome of the proceeding. *State v. Echols*, 2024-Ohio-5088, ¶ 50. Further, even when a defendant demonstrates that a plain error or defect affected the defendant's substantial rights, the Ohio Supreme Court has repeatedly emphasized that courts should "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus; *e.g., State v. Bailey*, 2022-Ohio-4407, ¶ 14

("the plain-error doctrine is warranted only under exceptional circumstances to prevent injustice").

**{¶20}** However, consecutive sentences imposed without making the requisite findings, or a sentence that is contrary to law, will constitute plain error that an appellate court may recognize. *See State v. Gill*, 2024-Ohio-2792, ¶ 48 (1st Dist.) ("trial court's failure to make the required findings before imposing consecutive sentences was plain error"); *State v. Price*, 2024-Ohio-1641, ¶ 7 (4th Dist.) ("a sentence that is contrary to law is plain error"). In the case at bar, we conclude that no error occurred.

**{¶21}** R.C. 2929.41(A) provides that "a prison term . . . shall be served concurrently with any other prison term," except as otherwise provided in specified statutes, like R.C. 2929.14(C). Relevant here, R.C. 2929.14(C)(4) allows a court to require an offender "to serve the prison terms consecutively" if the court makes the following findings: (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one of the three circumstances contained in R.C. 2929.14(C)(4)(a)-(c) applies. *Grashel* at ¶ 24.

{¶22} R.C. 2929.14(C)(4) provides:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶23} A trial court must make the R.C. 2929.14(C)(4) consecutive sentencing findings "at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell,* 2014-Ohio-3177, ¶ 37. However, a court need not "state reasons to support its findings" or "give a talismanic incantation of the words of the statute, provided that the

necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.; accord State v. Nolan,* 2024-Ohio-1245, ¶ 18 (4th Dist.); *Grashel* at ¶ 25.

**{¶24}** In the case sub judice, our review of the sentencing hearing transcript and the sentencing entry reveals that the trial court did make the appropriate R.C. 2929.14(C)(4) findings.  And we also note that appellant does acknowledge the trial court did make the required findings to impose consecutive sentences, both on the record at the sentencing hearing and in its sentencing entry.  Appellant also appears to acknowledge that each sentence is within the statutory range.

**{¶25}** Appellant, however, contends that the trial court's R.C. 2929.14(C)(4) consecutive sentencing findings are not supported by the record or are not appropriate for some of the following reasons: (1) appellant's "prior positive conduct while incarcerated" illustrates that consecutive sentences are not necessary to protect the public from future crime or to punish the offender, (2) no evidence of "great or unusual" harm exists from the offenses for which appellant was sentenced, and even if appellant caused "some" harm, no evidence exists that the harm was so great or unusual as to justify consecutive sentences, (3) the trial court's finding that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger he posed to the public is not supported by the

record because of the disparity between the state's sentencing recommendation and the trial court's total aggregate sentence, (4) appellant has not been given an opportunity for drug treatment as an alternative to incarceration, (5) the trial court increased appellant's sentence solely based on his failure to appear for his sentencing hearing, and (6) his bond violation did not outweigh the entirety of the record, facts, and circumstances in this case to allow the trial court to impose consecutive sentences "in such a draconian fashion," more than doubling appellant's total aggregate sentence from appellee's initial recommendation, from an indefinite sentence of 14 to 16 ½ years in prison to a total aggregate sentence of 33 to 43 ½ years in prison since the trial court ordered the sentences in Case No. 24CR39 and Case No. 24CR136 to be served consecutively to one another.

{¶26} Appellee, however, contends that appellant failed to establish, by clear and convincing evidence, that the record does not support consecutive sentences. Appellee argues that the plea agreement sentence recommendation, that included a minimum prison term of 14 years, necessarily would have included consecutive sentences because both Count 1 and Count 2, each with the longest possible individual sentence in the indictment in Case No. 24CR39, require a mandatory 11-year sentence

pursuant to R.C. 2925.11(C)(4)(f), 2929.03(C)(4)(g) and R.C.

2914.11(A)(1)(a).

R.C. 2925.11(C)(4)(f) provides:

> If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

R.C. 2925.03(C)(4)(g) provides:

> If the amount of the drug involved equals or exceeds one hundred grams of cocaine and regardless of whether the offense was committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, trafficking in cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term.

Finally, R.C. 2914.11(A)(1)(a) states:

> For a felony of the first degree committed on or after March 22, 2019, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code, except that if the section that criminalizes the conduct constituting the felony specifies a different minimum term or penalty for the offense, the specific language of that section shall control in the determining the minimum term or otherwise sentencing the offender but the minimum term or sentence imposed under that specific language shall be considered for purposes of the Revised Code as if it had been imposed under this division.

{¶27} In *State v. Smith*, 2020-Ohio-5316 (4th Dist.), Smith did not object to the imposition of consecutive sentences at the sentencing hearing. Thus, like the case at bar, we reviewed the consecutive sentences under the plain error standard. Id. at ¶ 50. In *Smith*, we concluded that, because the trial court made the statutory findings set forth in R.C. 2929.14(C)(4) at the sentencing hearing and in the sentencing order, no plain error existed in the imposition of consecutive sentences. Id. Similarly, in *State v. Grashel*, 2025-Ohio-580 (4th Dist.), this court held that "consecutive sentences imposed without making the requisite findings or a sentence that is contrary to law constitutes plain error," but found no error occurred when proper findings were made. *Id.* at ¶ 23.

{¶28} With regard to appellant's assertion that the record fails to support the trial court's finding that his conduct resulted in "great or unusual harm," appellant first argues that, although he possessed a significant amount of cocaine and had been charged with trafficking, no evidence existed of an "actual transaction," that "limited, or otherwise mitigated, the impact of the offenses on the public and on society as a whole." As appellee points out, however, other courts who have addressed this argument have found that, even without evidence of "actual harm" presented in the record, drug trafficking poses a "significant danger to the public, both directly and indirectly"

regardless of whether the person consuming the drug is injured. *See State v. Richey*, 2023-Ohio-336, ¶ 20 (12th Dist.). In *Richey,* the Twelfth District also concluded that the danger only increases when the drug trafficker continues to traffic drugs even after being caught. *Id.* Similarly, in *State v. Gaffney*, 2025-Ohio-4963 (7th Dist.), the trial court noted Gaffney's prior drug convictions and the dangerous effects his drug trafficking had on those who consume drugs and those indirectly impacted. "While no evidence in the record showed a direct serious physical or mental harm per se, the *Richey* case supports the finding of a serious potential and perhaps inevitable harm from continuing to traffic illegal drugs." *Gaffney* at ¶ 103.

**{¶29}** Second, appellant contends that the harm underlying his charges "should be compared to that of similar charges brought against other defendants." As appellee points out, however, in *Grashel* we rejected the argument that review of consecutive sentences should include a comparison to other similar offenders. "The focus of this part of the statute is the seriousness of the offender's conduct and the danger that the offender poses to the public. The statute does not instruct courts to consider the seriousness of the offender's conduct or danger in relationship to similar offenders." *Grashel* at ¶ 34. Thus, we concluded in *Grashel* that R.C. 2929.14(C)(4) does not require trial courts or reviewing courts "to engage in a

comparative analysis of other cases." *Grashel* at ¶ 23, citing *Glover,* 2024-Ohio-5195, ¶ 59 (lead opinion).

**{¶30}** With respect to R.C. 2929.14(C)(4)(c), appellant contends that his "history of conduct" demonstrates that he is not a threat to the public because no trial court has ever sentenced him to treatment rather than jail or prison. Confusingly, he simultaneously argues that he has "already responded favorably to lesser sanctions." Finally, appellant contends that the disparity between the appellee's original sentencing recommendation and the appellant's final sentence indicates that consecutive sentences are unwarranted, and argues solely based on his failure to appear for sentencing as he promised the court he would do so.

**{¶31}** In *State v. Reed,* 2025-Ohio-2753 (4th Dist.), the parties entered into a jointly recommended sentence at the plea hearing for a 9-month sentence. Similarly, Reed's counsel also convinced the trial court to allow Reed to report for sentencing several weeks in the future so he could be with a terminally ill relative. Like here, the trial court indicated its intention to sentence Reed to serve a 9-month jail term "if Reed showed up for sentencing." When, however, Reed failed to appear for sentencing, the court increased his sentence to 36 months. Moreover, although Reed also picked up additional felony charges

between the plea and sentencing, we note the similarities. *Id.* at ¶ 14.

**{¶32}** Similarly, in *State v. Dillon,* 2025-Ohio-5394 (4th Dist.), the parties entered a joint sentencing recommendation at the plea hearing and Dillon pleaded guilty to a second-degree felony count of aggravated drug trafficking in violation of R.C. 2925.03(A)(2). *Id.* at ¶ 4. After the trial court accepted Dillon's plea, counsel advised the court that Dillon awaited surgery in July, and requested the court to allow Dillon to sign the notice to appear for an August sentencing. After Dillon signed a notice to appear at his August 14, 2024 sentencing, he failed to appear. At the rescheduled sentencing hearing on December 11, 2024, the trial court stated that it had considered the oral statements, facts of the offenses, Dillon's criminal record, including his institutional record, the R.C. 2929.11(A) principles and purposes of sentencing, and the R.C. 2929.12 recidivism factors. The court noted Dillon's prior absence and poor institutional report summary and thereupon sentenced Dillon to (1) serve a mandatory minimum 6-year prison term up to a maximum 9-year prison term, (2) serve a mandatory 18-month to 3-year postrelease control term, and (3) pay costs. *Id.* at ¶ 8.

**{¶33}** In *Dillon*, this court concluded that Dillon's failure to appear at his initial sentencing hearing, despite signing a notice to appear, signaled a lack of seriousness and cooperation

with the court process.  *Id.* at ¶ 17; *See State v. Chandler*, 2020-Ohio-164, ¶ 7 (1st Dist.)(defendant's failure to appear is an appropriate recidivism factor for the trial court to consider when determining whether to impose a maximum sentence); *State v. Nazir*, 2024-Ohio-577, ¶ 26 (8th Dist.)(appropriate for a trial court to consider a failure to appear when crafting a sentence); *State v. Taylor*, 2012-Ohio-5733, ¶ 8 (8th Dist.)("[D]efendant's failure to appear at his sentencing hearing weighs in favor of finding that he would not be amenable to community control sanctions.").

**{¶34}** Although in the case sub judice appellant challenges consecutive rather than maximum sentences, we observed that the trial court informed Dillon at the plea hearing that the joint sentencing recommendation did not bind the court.  *Dillon* at ¶ 18.  Also, as here, the trial court warned Dillon that if he failed to appear for sentencing, the three-year recommendation "is going to be out the window," and both the court and counsel warned Dillon of the consequences of a failure to appear. Nevertheless, *Dillon* failed to attempt to contact the court and failed to appear.  *Id.* at ¶ 19.  Finally, when Dillon argued that his sentence was disproportionate because it differed from the initial joint sentencing recommendation, we observed that it is well settled that "[t]rial courts may reject plea agreements and that they are not bound by a jointly recommended sentence."

*Id.* at ¶ 20, citing *State v. Underwood*, 2010-Ohio-1, ¶ 29, citing *State ex rel. Duran v. Kelsey*, 2005-Ohio-3674, ¶ 6. *See also State v. Dye*, 2025-Ohio-1973, ¶ 26 (4th Dist.)(written plea form and counsel's statements can be used to discern whether defendant forewarned that trial court not bound to follow joint-sentencing recommendation).

**{¶35}** Appellant also asserts that his consecutive sentences violate his Fifth, Fourteenth, and Eighth Amendment protections. With respect to due process, the touchstone for determining constitutional fairness is notice. In *State v. Darrington,* 2024-Ohio-2299 (4th Dist.), the trial court informed Darrington that imposition of a jointly recommended sentence was contingent upon Darrington "staying out of trouble, appearing for sentencing, and abiding by the terms of his bond." *Id.* at ¶ 26. Darrington voiced understanding and agreed to these terms in entering his pleas of guilt. We observed that Darrington's failure to appear for his sentencing hearing, despite his lack of transportation, voided the terms of his plea agreement and released the trial court from any obligation it may have had to impose the jointly recommended sentence. *Id.* With respect to due process, we observed "[T]he touchstone for determining constitutional fairness in plea submissions is notice." *Id.* at ¶ 21, citing *State v. Elliott*, 2021-Ohio-424, ¶ 18 (1st Dist.).

{¶36} Thus, when a trial court does not provide adequate notice that it will not accept a stipulated plea, "the remedy is to resentence the defendant in accordance with the recommendation or allow the defendant to withdraw his plea." *Id.* at ¶ 19. In the case at bar, the trial court warned appellant that he would "one hundred percent go along with that recommended time" as long as appellant did not "get in trouble and make sure you show up." Thus, appellant did receive adequate notice.

{¶37} With respect to the Eighth Amendment, it is well established that sentences do not violate the constitutional provisions against cruel and unusual punishment unless the sentences are "so disproportionate to the offense as to shock the moral sense of the community." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964); *Dillon,* 2025-Ohio-5394, at ¶ 21.[3]

{¶38} In *State v. Grashel,* 2025-Ohio-580, (4th Dist.) at ¶ 48 we wrote "'The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *State v. Weitbrecht*, 86 Ohio St.3d at 373, 715 N.E.2d 167 (1999), quoting *Harmelin v. Michigan*, 501 U.S. 957,

---

[3] The Ohio Constitution in Section 9, Article 1 also states that "excessive bail should not be required; no excessive fines imposed; nor cruel and unusual punishments inflicted."

1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and in judgment); *accord State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 13. Moreover, "'"only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality"' may a court compare the punishment under review to punishments imposed in Ohio or in other jurisdictions." *Hairston* at ¶ 13, quoting *Weitbrecht* at 373, fn. 4, 715 N.E.2d 167, quoting *Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring in part and in judgment). "'Cases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.'" *Weitbrecht* at 371, 715 N.E.2d 167, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964), and citing *State v. Chaffin*, 30 Ohio St.2d 13, 282 N.E.2d 46 (1972), paragraph three of the syllabus. Thus, to establish that a sentence constitutes cruel and unusual punishment, "'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" *Weitbrecht* at 371, 715 N.E.2d 167, quoting *McDougle*, 1 Ohio St.2d at 70, 203 N.E.2d 334, and citing *Chaffin*, paragraph three of the syllabus. "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and

unusual punishment." (Citations omitted.) *McDougle*, 1 Ohio St.2d at 69, 203 N.E.2d 334.

**{¶39}** Thus, "[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *Id.; accord State v. Stevens*, 2017-Ohio-8692, ¶ 10 (5th Dist.). "Because the individual sentences imposed by the court are within the range of penalties authorized by the legislature, they are not grossly disproportionate or shocking to a reasonable person or to the community's sense of justice and do not constitute cruel and unusual punishment." *State v. Gwynne*, 2021-Ohio-2378, ¶ 30, citing *State v. Hairston*, 2008-Ohio-2338, ¶ 23; *State v. Netter*, 2024-Ohio-1068, ¶ 42 (4th Dist.).

**{¶40}** In the case sub judice, our review of the record reveals that the trial court complied with all pertinent sentencing requirements, reviewed and considered appellant's extensive criminal history, appellant's failure to appear at sentencing in spite of the court's willingness to permit appellant to visit with his terminally ill mother on the condition that he appear for his sentencing hearing, and the sentencing hearing testimony. The court arrived at a sentence within the statutory range. Consequently, we conclude that the record does not clearly and convincingly fail to support the trial court's imposition of consecutive sentences. R.C.

2953.08(G)(2)(a) allows for modification or vacation only when the appellate court "clearly and convincingly finds" that the evidence does not support the trial court's findings. *Glover*, 2024-Ohio-5195, at ¶ 46; *Hughes,* 2025-Ohio-894, at ¶ 49. Thus, in light of the foregoing, we do not clearly and convincingly find that appellant's sentence is contrary to law, nor does appellant's challenge rise to the level of plain error.

**{¶41}** Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.